**David A. LEVESQUE,**
**Plaintiff, Appellant,**

v.

**ANCHOR MOTOR FREIGHT, INC., et al., Defendants, Appellees.**

No. 87–1122.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1987.

Decided Nov. 10, 1987.

Martin W. Aisenberg, with whom Michael T. Eskey, Jones & Aisenberg, Thomas A. Tarro, III, and Tarro Law Associates, Providence, R.I., were on brief, for plaintiff, appellant.

Gerald C. DeMaria, with whom James A. Ruggieri and Higgins, Cavanagh & Cooney, Providence, R.I., were on brief, for defendants, appellees.

Before BOWNES, Circuit Judge, TIMBERS,* Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

In this personal injury suit, David A. Levesque, plaintiff-appellant, sought to recover damages from Anchor Motor

---

* Of the Second Circuit, sitting by designation.

Freight, Inc. (Anchor) and Joseph Tobin, defendants-appellees. The controversy arose in consequence of an accident which took place on March 14, 1984. Briefly stated, on that day Tobin (an employee of Anchor) drove a multi-level car carrier, fully loaded, to a dealership in Cranston, Rhode Island. After parking in the dealership's lot, he began unloading the nine spanking new chariots which comprised this shipment. The accident occurred mid-way through the job, when Tobin was removing an automobile from the upper level of the transporter. The appellant, a managerial employee of the dealership, claimed to have been struck by the backing vehicle and to have sustained grievous injuries.

To assuage his hurts, Levesque filed suit in the United States District Court for the District of Rhode Island, premising jurisdiction upon the diverse citizenship of the parties. The case was tried to a jury which, when presented with special interrogatories by the district court, found it necessary to answer only the first: the jurors agreed that the plaintiff had not proven Tobin (ergo Anchor, as his employer) guilty of any negligence. Accordingly, the district court entered judgment in favor of the defendants, and thereafter denied Levesque's motion for a new trial. This appeal ensued.

## I

The plaintiff's flagship argument is that, on the facts of this case, Tobin was negligent as a matter of law.[1] The district court, Levesque says, should have overturned the jury's contrary finding and ordered a new trial. The applicable standard of review is too familiar to warrant citation of authority: when the trial judge refuses to set aside a jury verdict, we reverse only if the verdict is so seriously mistaken, so clearly against the law or the evidence, as to constitute a miscarriage of justice. Thus, we turn to the nisi prius roll, narrating the relevant testimony in the light most flattering to the appellees and drawing all legitimate inferences in their favor.

We note, first, that the *only* direct evidence as to Tobin's conduct came from Tobin himself. Levesque's attention was focused elsewhere immediately before the mishap, and there were no other eye witnesses to the actual occurrence.[2] And Tobin's testimony on the point—what little there was of it—strikes us as less than exquisitely revelatory. We discuss it briefly, eliminating extraneous details.

Upon arriving at his destination on the day of the accident, Tobin parked the carrier in a location designated by the dealer's employees. It contained two layers of new vehicles. The dealer had a "checker" present to receive them (presumably, the plaintiff). The checker was described as the person "in charge." When the transporter was ready to be unloaded, Tobin went to work. Using a detachable ramp, sometimes called a "skid," he emptied the lower level, car by car. Each vehicle was driven off under its own power. All was calm.

Tobin then moved to the carrier's topmost layer, placed the skid into position, unchained the lead car, and positioned himself in the front seat, behind the wheel. Before entering the vehicle, he looked at the area around the foot of the ramp. It was, essentially, clear—but there was activity in the vicinity. Tobin backed slowly down the steep (roughly forty-five degree) incline.[3] He had his head out the open left-hand window, peering down along the left side to insure that the automobile re-

---

1. Notwithstanding the argument which he now makes, appellant did not move at the close of all the evidence for a directed verdict on this issue.

2. In fact, the defendants denied that there was an accident. The jury decided the case on the threshold issue—negligence—and never reached questions such as whether Levesque was injured *at all* or whether Tobin's conduct proximately caused any injuries. So, for purposes of this appeal, we assume *arguendo* that the vehicle did

collide with appellant's person at some point. We express no opinion, one way or the other, as to whether an accident took place.

3. There was testimony to the effect that Tobin had no choice but to drive the vehicle off the upper level in reverse. Because of the size of the load and the positioning of this particular car, it could not have been driven off the transporter frontwards.

mained on the narrow ramp. He stopped as soon as the car's wheels were on the pavement. Tobin testified that he backed this car off the upper level in his accustomed manner. He had performed the same procedure in much the same way for many years, without incident. The string was broken on this occasion, however, as Levesque was struck by the vehicle upon its descent.

 The plaintiff argues that, by backing down the skid without keeping a more current rearward lookout, Tobin was negligent beyond all doubt. But life is not so simple. Rhode Island law controls in this diversity case. In that jurisdiction, as elsewhere, a driver's duty is to use care which is reasonable under the circumstances then obtaining. Much more often than not, measurement of a given set of facts against this benchmark involves a judgment call. There is no computer printout which can tell us the precise number of seconds that one must look before he leaps. Jurors, using common sense and collective experience assess credibility and probability, and proceed to make evaluative judgments, case by case: challenged behavior is or is not negligent. Indeed, this is the quintessential stuff of which jury questions are fashioned.

To be sure, there are situations so extreme that a court, however devoted to the jury system, must nevertheless in conscience conclude that no rational venireman could reach any result save one. But we have no need to map that frontier today. This case trenches nowhere near the border. Granted that Tobin's negligence was certainly arguable: perhaps he should have looked more thoroughly, or at a different time, or in a different manner. Perhaps he should have sounded his horn or taken other preventative action. But these are arguments as to what indicia of care might reasonably be expected, not absolute propositions of law etched in stone. There are precious few guides to what may or may not comprise reasonable prudence when

one is assigned to drive a car in reverse down a steep and narrow incline from a considerable height, with limited visibility. The "perhapses" which dot this cryptic record are for factfinders to resolve—not for judges imperiously to dictate.

Given the highly idiocratic nature of the circumstances, the issue was, we think, plainly one for the jury.[4] We are not prepared to say, in this case and on this record, that the jury acted irrationally or that the veteran district judge—who saw and heard the witnesses, and whose consummate familiarity with Rhode Island law we acknowledge—abused his discretion in denying the appellant a new trial. No miscarriage of justice looms on the horizon.

## II

Appellant has raised two other points. They warrant only the briefest of mention.

Levesque's assertion that the jury was imperfectly instructed was virtually withdrawn by his counsel at oral argument. In any event, the district court's charge seems to have been altogether an appropriate one, covering the relevant issues lucidly and well.

The remaining contention—that the jury verdict should be jettisoned because it stemmed from passion and prejudice—is entirely speculative and wholly unsupported by a reading of the record. We, like the district judge, have been unable to discern any serious imbalance between the proof at trial and the outcome of the proceeding. Nor can we divine a predicate for the hypothesis that the talesmen soured on the plaintiff for impermissible reasons. Indeed, it beggars credulity to argue that a lay jury was so swayed by concern for a corporate defendant (like Anchor) that it turned the case topsy-turvy to deprive an injured plaintiff of recompense. And, insofar as appellant bases this claim on the inflammatory invective supposedly used by defense counsel in his summation, the short answer is that the plaintiff interposed no

---

**4.** This was particularly true, of course, because under Rhode Island law plaintiff had the bur- den of *proving* defendants to be negligent.

contemporaneous objections thereto. The verdict was not, from what we can see, against either the law or the weight of the evidence.

### III

We need go no further.[5] The district court properly submitted the negligence issue for jury consideration and acted within its discretion in denying plaintiff's posttrial motion to upset the verdict. The judgment below must be

*Affirmed.*

---

**5.** It is no accident that this opinion is bereft of a single explicit citation to any statute, rule, or reported decision. The matter is a fact-intensive one. The only principles of law implicated in the case are so well settled as not to require citation of authority. Rather than exhibiting any lack of scholarship on our part, we view the pristine nature of these pages as a testament to our steadfast unwillingness to confer epicurean status on the bland and undistinguished fare which appellant has served up for our consideration.