USCA1 Opinion

 

 August 25, 1995 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1291 RUSSELL VIOLETTE, Plaintiff - Appellee, v. SMITH & NEPHEW DYONICS, INC., Defendant - Appellant. ____________________ No. 94-1334 RUSSELL VIOLETTE, Plaintiff - Appellant, v. SMITH & NEPHEW DYONICS, INC., Defendant - Appellee. ____________________ ERRATA SHEET The opinion of this court issued on August 7, 1995 is amended as follows: The coversheet should state that it is an appeal from the United States District Court for the District of Maine. UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1291 RUSSELL VIOLETTE, Plaintiff - Appellee, v. SMITH & NEPHEW DYONICS, INC., Defendant - Appellant. ____________________ No. 94-1334 RUSSELL VIOLETTE, Plaintiff - Appellant, v. SMITH & NEPHEW DYONICS, INC., Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Eugene W. Beaulieu, U.S. Magistrate Judge] _____________________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Young,* District Judge. ______________ _____________________ Joseph J. Leghorn, with whom Peter T. Wechsler, Warner & __________________ _________________ ________ Stackpole, Edward W. Gould and Gross, Minsky, Mogul & Singal, _________ ________________ ________________________________ P.A., were on brief for appellant Smith & Nephew Dyonics, Inc. ____ Daniel J. Popeo and Richard A. Samp on brief for Washington ________________ _______________ Legal Foundation and Allied Educational Foundation, amici curiae.  ____________________ * Of the District of Massachusetts, sitting by designation. Randall E. Smith, with whom John H. O'Neil, Jr., Smith, _________________ ____________________ ______ Elliott, Smith & Garney, P.A., were on brief for appellee Russell _____________________________ Violette. Jeffrey R. White on brief for the Association of Trial __________________ Lawyers of America, amicus curiae. ____________________ August 7, 1995 ____________________ -2- YOUNG, District Judge. Russell Violette ("Violette") YOUNG, District Judge. ______________ instituted this action in the Superior Court in and for Kennebec County, Maine, seeking to recover for damage to his left wrist allegedly caused by the improper use of a medical device manu- factured by the defendant Smith & Nephew Dyonics, Inc. ("Dyonics"), a Massachusetts corporation. Dyonics removed to federal court, where Violette ultimately obtained a jury verdict in the amount of $250,000. Dyonics' appeal duly followed. It must fail. The relevant prior proceedings and the facts supporting the jury's verdict, see Data General Corp. v. Grumman Sys. ___ ____________________ _____________ Support Corp., 36 F.3d 1147, 1172 (1st Cir. 1994), may be ______________ sketched briefly. In the summer of 1991, Violette experienced numbness in his hands and consulted Dr. Robert C.G. Hottentot, an orthopedic surgeon. Dr. Hottentot's diagnosis was carpal tunnel syndrome, and Violette underwent a relatively new surgical "endoscopic" procedure involving the insertion of a slotted metal tube with a camera lens into the carpal tunnel running from the patient's wrist to his palm. The surgeon employed the technique developed and equipment manufactured by Dyonics known as the ECTRA System (the "product"), which consists of an endoscope and a set of related devices specifically designed for endoscopic carpal ligament release. The outcome of the surgery was not as doctor and patient had hoped -- Violette's ulnar nerve and artery were severed, resulting in permanent injury to the nerve which left his small and ring fingers curled up into the shape of a -3- claw. Violette's tort action against Dyonics alleged negligence (primarily failure to warn), design defect, and breach of warranty. In its post-removal Answer, Dyonics asserted four affirmative defenses: 1) the product was designed and manufactured using techniques representing the state of the art at the time it was manufactured and sold; 2) any harm to Violette was caused entirely by the fault of third parties for which Dyonics cannot be held liable; 3) Dyonics provided adequate instructions and warnings regarding the appropriate use of the product; and 4) "Federal regulation of the subject product preempts the present action." With the parties' consent, the case proceeded to trial before a United States Magistrate Judge on the failure to warn and design defect theories, Violette having waived his breach of warranty claim. At the close of Violette's evidence, Dyonics moved for directed verdict, which was denied. A renewed motion for directed verdict, made at the end of the defense case, and a motion for judgment notwithstanding the verdict or for new trial, made after the jury came back in Violette's favor, met with a similar fate. Other than asserting federal preemption in its answer, Dyonics never mentioned it again either before or during the trial. It surfaced as an allegedly viable issue only after the jury returned its verdict. A. Preemption A. Preemption The thrust of Dyonics' appeal is that provisions of the -4- Federal Food, Drug and Cosmetic Act of 1938, 21 U.S.C.A. 301 et seq. (West 1972 & Supp. 1993), preempt Violette's state-law _______ products liability claims. Specifically, Dyonics points to the Medical Device Amendments of 1976, 21 U.S.C.A. 351-60 (West Supp. 1993), as barring the claims made in this case.1 See ___ generally Gail H. Javitt, I've Got You Under My Skin -- And I _________ ______________________________________ Can't Get Redress: An Analysis of Recent Case Law Addressing _________________________________________________________________ Preemption of Manufacturer Liability for Class III Medical _________________________________________________________________ Devices, 49 FOOD AND DRUG L.J. 553 (1994). It is simply too _______ late, however, for Dyonics to make this argument. Regardless of its potential applicability, and we express no opinion on the subject, Dyonics has waived the preemption issue by raising it substantively for the first time after trial.  The question of waiver is controlled by a recent decision of this court, Sweeney v. Westvaco Co., 926 F.2d 29, 36- _______ ____________ 41 (1st Cir.), cert. denied, 502 U.S. 899 (1991). In Sweeney, we _____ ______ _______ held that the defendant waived its preemption defense by waiting to raise it until after the jury had returned an adverse verdict. Id. at 37. Westvaco's failure to "alert the court to the ___  ____________________ 1 The amendment states in part:  [N]o state . . . may establish or continue in effect with respect to a device intended for human use any requirement . . . which is different from, or in addition to, any requirement applicable under this chapter to the device, and . . . which relates to the safety or effectiveness of the device. . . . 21 U.S.C. 360k(a) (West Supp. 1993). -5- problem" at any one of myriad opportunities prior to the jury verdict led us to decline to consider the defense. So here. An issue not presented to the trial court may not be raised for the first time on appeal. G.D. v. Westmoreland ____ ____________ School Dist., 930 F.2d 942, 950 (1st Cir. 1991) (plaintiff cannot ____________ raise on appeal issue not articulated below); Wallace Motor ______________ Sales, Inc. v. American Motor Sales Corp., 780 F.2d 1049, 1067 ____________ ___________________________ (1st Cir. 1985). Although Dyonics pleaded preemption as an affirmative defense in its answer, it neither developed a record on the issue nor pressed it in any fashion before the district court. Merely mentioning an issue in a pleading is insufficient to carry a party's burden actually to present a claim or defense to the district court before arguing the matter on appeal. Cookish v. Cunningham, 787 F.2d 1, 6 (1st Cir. 1986) (per curiam) _______ __________ (allegation in pleadings insufficient to preserve issue on appeal); Bratt v. International Business Machines Corp., 785 F.2d _____ _____________________________________ 352, 362 n.1 (1st Cir. 1986) (breach of confidentiality claim mentioned in complaint but never pressed deemed waived); Wallace _______ Motor Sales, 780 F.2d at 1067 (1st Cir. 1985) (issue raised in ___________ pleadings but not at trial was not "presented" to district court and could not be argued on appeal) (citing In re Linda Coal and _____________________ Supply Co. v. L.H. Haberman and Son, 255 F.2d 653 [3d Cir. ___________ _______________________ 1958]). Dyonics had ample opportunity and incentive to assert preemption below. It chose, however, neither to file a motion to dismiss nor to press for summary judgment on the issue. In its -6- Pretrial Memorandum, under the headings "Facts and Defenses" and "Controverted Points of Law," Dyonics asserted only that the endoscopic carpal tunnel surgery was an "accepted practice"; that it warned physicians, including Dr. Hottentot, of the possibility of injury such as that incurred by Violette; and that Violette's claim was barred by the "learned intermediary" defense. There is no mention of preemption. Nor did Dyonics assert preemption in its trial brief, its numerous motions in limine, its two motions for directed verdict, and its motion for judgment n.o.v. or for new trial. See Sweeney, 926 F.2d at 38. ___ _______ For whatever reason, it is plain that preemption flickered but once, dimly, on the radar screen of this litigation and then disappeared forever, abandoned by Dyonics, depriving the magistrate judge of his rightful opportunity to address the question in the first instance. To allow Dyonics to resurrect the issue here would undermine the logic behind our refusal to consider issues not presented below: Dyonics "cannot evade the scrutiny of the district court . . . on appeal with a new claim in order to create essentially a new trial." Westmoreland School ___________________ District, 930 F.2d at 950. Since this is precisely what Dyonics ________ is attempting, and as there are no exceptional or particular circumstances requiring a detour from the traditional rule, see id., the applicability of federal preemption is deemed waived and ___ we will not examine its applicability to this case. No doubt recognizing the apparent applicability of Sweeney v. Westvaco to the facts of this case, Dyonics argues _______ ________ -7- that, in the present circumstances, preemption is a jurisdictional matter which cannot be waived and may be raised at any time. It relies primarily on International Longshoremen's ____________________________ Ass'n v. Davis, 476 U.S. 380 (1986), where the Supreme Court held _____ _____ that Congress had deprived the courts of jurisdiction to decide cases involving conduct arguably protected by the National Labor Relations Act, and thus that the plaintiff's state-law fraud claim was preempted despite the defendant's failure to raise the issue until after the jury's verdict. See id. at 398; see also ___ ___ ________ Sweeney, 926 F.2d at 37-38. In Sweeney, however, we pointed out _______ _______ that the Davis principle stemmed from federal statutes involving _____ a "choice-of-forum rather than a choice-of-law question." Sweeney, 926 F.2d at 38 (quoting Davis, 476 U.S. at 391 & n.9). _______ _____ That is, where Congress has designated another forum for the resolution of a certain class of disputes, such as the National Labor Relations Board in Davis, such designation deprives the _____ courts of jurisdiction to decide those cases. See Sweeney, 926 ___ _______ F.2d at 37. Where, however, the question is whether state tort or federal statutory law controls, preemption is not jurisdictional and is subject to the ordinary rules of appellate adjudication, including timely presentment and waiver. See id. ___ ___ at 39. This case presents a "choice-of-law" question and thus falls squarely within the latter category. Preemption is not here jurisdictional, and was waived when not presented in the -8- district court.2 B. The Jury Verdict B. The Jury Verdict Violette claimed generally that the ECTRA System was "in a defective condition unreasonably dangerous," and that Dyonics failed to warn of the dangers associated with its  ____________________ 2 None of Dyonics' proffered authority addresses the question of waiver of the preemption issue on appeal. See Kennan v. Dow ___ ______ ___ Chemical Co., 717 F. Supp. 799 (M.D. Fla. 1989); Fitzgerald v. _____________ __________ Mallinckrodt, Inc., 681 F. Supp. 404 (E.D. Mich. 1987); Ignace v. __________________ ______ International Playtex, Inc., No. 86-C-480-C, 1987 WL 93996 (W.D. ___________________________ Wis. Aug. 14, 1987). In each of those cases, the defendants were permitted to raise the preemption issue for the first time in the context of summary judgment -- an unremarkable result given the liberal standard for amendments to pleadings of Fed. R. Civ. P. 15(c). As the time for amending pleadings has long passed here, these cases are inapposite. Nor is a recent case of ours, Mendes v. Medtronic, ______ __________ Inc., 18 F.3d 13 (1st Cir. 1994), of any assistance to Dyonics. ____ Affirming a grant of summary judgment to the defendant, we held there that the Medical Device Amendments, 21 U.S.C. 360k, preempted plaintiff's common law negligent failure to warn claim against a pacemaker manufacturer because a factfinder could impose liability on such a claim "applying standards differing from or adding to FDA's." Id. at 19. The language of the ___ statute and its application in Mendes leave open the possibility ______ that a state may impose, establish, or continue burdens identical to the federal standards, leading ineluctably to the conclusion that the statute's preemptive effect is not jurisdictional. Had Dyonics brought its preemption argument before the district court at the proper time, like the Mendes plaintiff, this Court could ______ have reached the merits. The supplemental authorities provided by Dyonics -- recent cases in which district courts have held that the Medical Device Amendments preempt state tort claims -- merely serve to highlight the proper procedural context in which preemption claims ought first be litigated. See Committee of ___ _____________ Dental Amalgam Alloy Mfrs. v. Henry, 871 F. Supp. 1278, 1285 ____________________________ _____ (S.D. Cal. 1994) (holding on summary judgment that section 360[k] preempts California Safe Drinking Water and Toxic Enforcement Act of 1986); Talbott v. C.R. Bard, Inc., 865 F. Supp. 37, 39-40 (D. _______ _______________ Mass. 1994) (holding on motion to dismiss that wrongful death and other state-law causes of action preempted by section 360[k]) (appeal pending); Feldt v. Mentor Corp., No. H-93-2205, slip op. _____ ____________ at 1-2, 10 (S.D. Tex. July 11, 1994) (holding on summary judgment that negligence and product liability claims preempted by Medical Devices Amendments and FDA regulations). -9- product. Dyonics asserts that as matter of law its product was free from defect; that its product was unavoidably unsafe and is therefore exempt from strict liability; that Dyonics fulfilled its duty to warn; that Dyonics cannot be liable for a surgeon's selection of a particular procedure; and that Violette failed to prove the product proximately caused his injuries. Dyonics also urges that we reverse because the magistrate judge declined to give certain jury instructions. These arguments reflect more hope than experience. Maine law provides: One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller. ME. REV. STAT. ANN. tit. 14, 221 (West 1980). Maine applies the danger/utility test to claims of design defects -- that is, the finder of fact must weigh the utility of the product against the danger it presents. Guiggey _______ v. Bombardier, 615 A.2d 1169, 1172 (Me. 1992); St. Germain v. __________ ___________ Husqvarna Corp., 544 A.2d 1283, 1285 (Me. 1988); Stanley v. _______________ _______ -10- Schiavi Mobile Homes, Inc., 462 A.2d 1144, 1148 (Me. 1983); ____________________________ Porter v. Pfizer Hosp. Prod. Group, Inc., 783 F. Supp. 1466, 1474 ______ ______________________________ (D. Me. 1992) (plaintiff cannot prevail on defective design claim where he introduced no evidence that the utility of the design was outweighed by the risks). This process involves an examination of utility, risk, and the feasibility of safer alternatives. St. Germain, 544 A.2d at 1285 (quoting Stanley, ____________ _______ 462 A.2d at 1148). The jury's determination that the product was not safely designed to carry out its intended use was supported by the evidence, and therefore must stand.  Dr. Morton Kasdan testified that the product here was defectively designed because it required only approximations in the initial placement of the tube on the outside of the skin without being able to see the ulnar nerve and artery, and that when inserted below the carpal ligament, the knife cuts through the ligament before the surgeon can see what is above the ligament. Dr. Kasdan also testified that the risk involved was enormous and that the product's use provided no benefit beyond those available with the safer, proven, alternative technique of open carpal tunnel surgery. Dyonics' own expert admitted that he had participated in the development of an alternative "extrabursal" technique which sought to minimize the risks by moving the initial placement point and the cutting line further from the ulnar nerve. Given such testimony, there was sufficient competent evidence for the jury to believe and conclude that the ECTRA System was unreasonably dangerous and of little added -11- utility compared to available alternatives -- in short, defectively designed.3 The jury's determination that Dyonics failed to provide adequate warnings and directions is likewise supported by the evidence. A manufacturer must provide expected users of its product with warnings of the risks and "specific directions for the product's safe use." Pottle v. Up-Right, Inc., 628 A.2d 672, ______ ______________ 675 (Me. 1993). While the Supreme Judicial Court of Maine has not decided the matter, the general rule regarding medical devices (and, more frequently and by analogy, prescription drugs) is that the manufacturer must warn the physician -- the so-called "learned intermediary" -- and not the patient directly. See ___  ____________________ 3 Likewise, the evidence of an alternative safe method of surgery defeats Dyonics' claim that its product is unavoidably unsafe and therefore exempt from strict liability under comment k of section 402A of the Restatement (Second) of Torts, which requires a showing that the utility or benefit of the product outweighs its risk of danger. See Kearl v. Lederle Lab., 218 ___ _____ ____________ Cal. Rptr. 453, 464 (Ct. App. 1985) (court must consider availability and safety of alternative products); Belle Bonfils ______________ Memorial Blood Bank v. Hansen, 665 P.2d 118, 123 (Colo. 1983) (en ___________________ ______ banc) (manufacturer must demonstrate that the "product's benefits could not be achieved by a substitute product or in another manner"); Toner v. Lederle Lab., 732 P.2d 297, 306 (Idaho 1987) _____ _____________ (additional element of comment k's requirement of unavoidable risk is that there must be "no feasible alternative design which on balance accomplishes the subject product's purpose with a lesser risk"); Grundberg v. Upjohn Co., 813 P.2d 89, 93 (Utah _________ ___________ 1991) (same). Even if comment k accurately reflects Maine common law -- a point we need not decide and express no opinion thereon -- the refusal of the magistrate judge to find the product unavoidably unsafe and exempt from strict liability was not clear error. Salve Regina College v. Russell, 499 U.S. 225, 233 (1990) ____________________ _______ (mixed questions of fact and law are reviewed for clear error; "deferential review" warranted when district court "better positioned" to decide the issue); Touch v. Master Unit Die _____ _________________ Prods., Inc., 43 F.3d 754, 757 (1st Cir. 1995); ICC v. Holmes ____________ ___ ______ Transp., Inc., 983 F.2d 1122, 1128 (1st Cir. 1993). _____________ -12- Knowlton v. Deseret Medical, Inc., 930 F.2d 116, 120 n.2 (1st ________ ______________________ Cir. 1991) (in failure-to-warn suit against catheter manufacturer, we noted that it "is generally accepted that in a case involving medical products prescribed or used by a physician or trained medical personnel, the warning runs to the physician not the patient"); Phelps v. Sherwood Medical Indus., 836 F.2d ______ _______________________ 296, 299, 302 (7th Cir. 1987) (heart catheter manufacturer has duty to warn physicians); Brooks v. Medtronic, Inc., 750 F.2d ______ ________________ 1227, 1232 (4th Cir. 1984) (pacemaker manufacturer has duty to warn physician, not patient); Desmarais v. Dow Corning Corp., 712 _________ _________________ F. Supp. 13, 17 & n.5 (D. Conn. 1989) (manufacturer of breast implants has duty to warn physician); cf. Garside v. Osco Drug, ___ _______ __________ Inc., 976 F.2d 77, 80 (1st Cir. 1992) (where product is a ____ prescription drug, duty to warn runs to physician). Dr. Chow, Dyonics' ECTRA System instructor, admitted that in May of 1991, when the equipment was purchased by Dr. Hottentot's practice, the extrabursal technique was being taught at seminars put on by the ECTRA faculty. Both Dr. Chow and Jan Cook, the associate product manager for Dyonics, admitted that the extrabursal technique was safer and easier to learn and to teach. Dr. Hottentot was not provided with any materials referring to this safer technique or given adequate warnings of the real potential for complications. On this record, we conclude that the jury had sufficient basis to find Dyonics in breach of its duty to warn. Dyonics argues that a failure to warn claim will not lie under Maine law where the risk of danger associated with the -13- use of the product was obvious to the user, citing Lorfano v. _______ Dura Stone Steps, Inc., 569 A.2d 195, 197 (Me. 1990) ("dangers _______________________ posed by the use of steps without a handrail are patently obvious and equally apparent to all"). A high-technology, precision medical device is, needless to say, a far cry from a handrail. Moreover, while a physician cannot be held liable for an adverse outcome simply because the result could have been avoided by a different selection as between two reasonable procedures, Roberts _______ v. Tardif, 417 A.2d 444, 448 (Me. 1980), here there was ______ sufficient evidence that use of the ECTRA System was unreasonably dangerous without further warnings or proper instructional materials. A jury could conclude that Dr. Hottentot's uninformed choice of the product was not a reasonable selection of an alternative surgical procedure, thus insulating Dyonics from liability. Any extension of Roberts to protect a _______ manufacturer in Dyonics' position is unwarranted. A jury verdict may be set aside "only if [it] is so seriously mistaken, so clearly against the law or the evidence, as to constitute a miscarriage of justice." Levesque v. Anchor ________ ______ Motor Freight,Inc., 832 F.2d 702, 703 (1st Cir. 1987). Such is __________________ not the case here. Finally, the magistrate judge committed no error by refusing to give two proposed jury instructions. Dyonics sought an instruction, based on Roberts, supra, that a manufacturer of a _______ _____ medical device cannot be held liable merely because the surgeon could have pursued an alternate course of treatment and thereby -14- avoided the injury. As noted above, such an extension of Roberts _______ is unwarranted in this case. Dyonics also sought the following instruction, citing May v. Dafoe, 611 P.2d 1275, 1278 (Wash. App. ___ _____ 1980): A manufacturer of medical products is not responsible for the education and training of doctors who may use its product. The responsibility for determining whether an individual doctor is sufficiently skilled and trained to use a particular product lies with the doctor himself or herself and the facilities where they practice. Such instruction was unnecessary in this failure to warn-design defect case and, in any event, the refusal to give this instruction caused no prejudice to Dyonics since Dr. Hottentot followed the product instructions he had been given. See Davet ___ _____ v. Maccarone, 973 F.2d 22, 26 (1st Cir. 1992) ("An error in jury _________ instructions will warrant reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole"). For these reasons, the Amended Judgment entered in this action on March 17, 1994, pursuant to the jury's verdict, is affirmed.4 ________  ____________________ 4 Violette also cross-appealed, requesting reversal of numerous rulings of the magistrate judge in the event we had determined that Dyonics was entitled to a new trial. As Dyonics is not so entitled, there is no need to address the issues raised by the cross-appeal, and it is dismissed as moot. -15-