December 6, 1995 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

 
No. 95-1265

CMB CONSTRUCTION COMPANY, INC.,

Plaintiff, Appellee,

v.

WEIL-McLAIN, ETC.,

Defendant, Appellant.

 

No. 95-1343

CMB CONSTRUCTION COMPANY, INC.,

Plaintiff, Appellee,

v.

EMERSON ELECTRIC CO., ETC.,

Defendant, Appellant.

 

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge] 

 

Selya and Cyr, Circuit Judges, 

and Casellas,* District Judge. 

 
 

*Of the District of Puerto Rico, sitting by designation.

James D. Crawford, with whom Jennifer DuFault James and Schnader, 
Harrison, Segal & Lewis were on brief for appellants. 
Wilbur A. Glahn III, with whom Kelly A. Ayotte, McLane, Graf, 
Raulerson & Middleton Professional Association, Normandin, Cheney & 
O'Neil and Duncan J. Farmer were on brief for appellee. 

 

December 8, 1995
 

Per Curiam. In 1988, CMB Construction Company, Inc. Per Curiam. 

("CMB") completed a condominium project in New Hampshire's Loon

Mountain ski area, and placed all twenty-six units on the market.

The months of December through April are the prime season for

condominium sales in the area. The heating systems installed in

the condominiums failed during December 1988 and January 1989,

which caused water pipes to freeze and burst, and resulted in

extensive water and structural damage to thirteen condominium

units. The needed repairs on the damaged units were not complet-

ed until May 1989. Although CMB sold the damaged units during

the following winter (1989-1990), less advantageous market

conditions brought prices well below those which had prevailed

during the 1988-89 season.

CMB promptly initiated a product liability action in

New Hampshire federal district court, against appellant The

Marley Company, Weil-McLain Division ("Weil-McLain"), which

manufactured the heating systems, and against appellant Emerson

Electric Company ("Emerson"), which manufactured the "surface

ignitors" incorporated in the heating systems. CMB sought

compensatory damages for its repair and replacement costs, as

well as consequential damages consisting of the reduced condomin-

ium sale revenues resulting from the one-year delay associated

with repairing the thirteen damaged units. Relying on a strict

liability theory, CMB ultimately obtained a $503,597.22 jury

award for its repair and replacement costs, and a $1,400,400

consequential damages award. Appellants unsuccessfully moved for

3

judgment as a matter of law and for a new trial. On appeal, they

challenge only the consequential damages award.1 

Although the district court ruling denying the Rule

50(b) motion for judgment as a matter of law is subject to

plenary review, the jury verdict will not be set aside unless no

rational factfinder could have reached the same verdict on the

evidence adduced at trial. See Bezanson v. Fleet Bank-N.H., 29 

F.3d 16, 20 (1st Cir. 1994). A district court ruling denying a

motion for new trial will be upheld absent an abuse of discretion

which results in a "miscarriage of justice." See Lama v. Borras, 

16 F.3d 473, 477 (1st Cir. 1994). We review both rulings by

considering the evidence and all rational inferences therefrom in

the light most favorable to the nonmoving party, viz., CMB, but

making allowance for evidentiary weight and credibility determi-

nations on the latter motion only. See Levesque v. Anchor Motor 

Freight, Inc., 832 F.2d 702, 703 (1st Cir. 1987). 

The first contention pressed by appellants is that New

Hampshire strict liability law does not permit a claimant in

CMB's position to recover consequential damages based exclusively

on "commercial losses." Like the majority of jurisdictions, New

Hampshire has endorsed the so-called "economic loss" doctrine,

see, e.g., Public Serv. Co. of N.H. v. Westinghouse Elec. Corp., 

685 F. Supp. 1281 (D.N.H. 1988), which holds that damages relat-

ing to product liability whether based in negligence or strict
 

1St. Paul's Insurance Company, CMB's subrogee, received the
$503,597.22 in compensatory damages. Appellants settled with St.
Paul's during this appeal.

4

liability normally are not recoverable as compensation for 

injury exclusively caused to the defective "product" itself; that 

is, where the defect in the failed product causes no collateral

"physical" damage, either to the person of the consumer or anyone

else, nor to any property other than the defective "product" 

itself. See East River S.S. Corp. v. Transamerica DeLaval, 476 

U.S. 858, 866, 868, 870 (1986) (surveying various rules, and

adopting the majority rule for use in admiralty cases). For

example, if a defective widget simply malfunctions, recovery for

this sort of insurable loss the diminution in the value of the 

widget normally must be based in contract or warranty law, not 

tort liability. Id. at 870-71 (noting that such "insurable" 

losses "essentially [involve] the failure of the purchaser to

receive the benefit of its bargain the core concern of con-

tract law"). This traditional tort-law bar to "economic loss" 

recoveries presumably would extend also to preclude recoveries 

for consequential damages attributable to the defective-product

malfunction, including loss of business opportunities. Id. at 

874 (noting that warranty law is better suited to redressing such

losses, since it limits consequential damages, such as lost

profits, to those which are a "foreseeable result of the

breach"). 

The only pre-verdict exegesis offered by appellants

below on this issue appears in their pretrial memorandum support-

ing a motion to dismiss the claims of CMB and its insurer. See 

5

supra note 1.2 Appellants repeatedly stressed that the New 

Hampshire law relating to "economic loss" was already "clear" 

and that the New Hampshire state courts had "long held" strict

liability unavailing where a claimant alleges only "damage to 

the product itself and economic losses caused thereby" and there 

is no allegation of "bodily injury or serious threat or probabil-

ity of bodily injury." Memorandum, at 2-3. See Fed. R. Civ. P. 

50(a) ("motion shall specify . . . the law and the facts on which

the moving party is entitled to judgment"). Thus, given the

evidence of extensive structural damage to the condominium units, 

appellants' argument before the district court necessarily 

implied that appellants were relying on the premise that the 

"product" at issue was the condominium units, not merely the 

heating systems. 

Their argument on appeal has been transformed, however.

Following a passing reference to the highly dubious contention

that the condominium units must be considered the integrated

"product" which implicated settled New Hampshire law, see Brief 

 

2When they argued their motion for judgment as a matter of
law at the close of the evidence, see Fed. R. Civ. P. 50(a), 
appellants simply referred to their pretrial motion: "We do not
waive our right to our position expressed in our motion for
summary judgment (sic) that in a case of pure economic loss there
is no such thing as a products liability claim." Their attempt
to avoid waiver by relying on their post-verdict motions under 
Rule 50(b) is unavailing as well. See Perdoni Bros., Inc. v. 
Concrete Systs., Inc., 35 F.3d 1, 3 (1st Cir. 1994) ("The law is 
crystal clear that `a party may not base its motion for a judg-
ment n.o.v. on a ground that was not argued in its [pre-verdict]
motion for directed verdict.'"). 

6

for Appellant at 13 n.3,3 appellants contend, in the alterna-

tive, that this case presents a question of first impression 

under New Hampshire law. Id. at 15. Thus, even if the "product" 

consisted of the heating systems only, and even if the heating-

system malfunctions caused collateral damage to the condominium 

units (i.e., to property other than the product itself), appel-

lants now argue that the New Hampshire courts surely would

"extend" the East River rationale to these claims. Consequently, 

whether or not it was proper to award damages to CMB's insurer

for the repair/replacement costs under a strict liability theory,

see supra note 1 and accompanying text, appellants now say that 

CMB cannot use strict liability to recover consequential "commer-

cial" losses flowing from the malfunctioning of the heating

systems. Their revisionist argument on appeal never broached

below urges nothing less than that New Hampshire's "economic

loss" doctrine should be extended beyond the context of cases in 

which the defective product causes damage only to the product

itself. We think it too ambitious an initiative to be enter-

 

3Appellants waived any claim that the condominium units were
the "product," both on appeal, see FDIC v. Bay St. Dev. Corp., 32 
F.3d 636, 639 n.3 (1st Cir. 1994) (appellate arguments presented
in perfunctory fashion without developed argumentation are deemed
waived), and before the district court, see Lee v. Life Ins. Co. 
of N.A., 23 F.3d 14, 20 n.11 (1st Cir.), cert. denied, 115 S. Ct. 
427 (1994); see also Perdoni, 35 F.3d at 3 ("Sweeping invocations 
of conclusory theories or abstract principles will not suffice"
for pre-verdict Rule 50 motion). Moreover, it seems most likely
that their double waiver traces to the complete lack of case
authority supporting their contention. See East River, 476 U.S. 
at 867 (normally, "product" is the "integrated package" sold to
the consumer). 

7

tained for the first time on appeal.4 See, e.g., Lee v. Life 

Ins. Co. of N.A., 23 F.3d 14, 20 n.11 (1st Cir.), cert. denied, 

115 S. Ct. 427 (1994). 

Second, appellants contend that the superseding and

efficient cause of the damages sustained by CMB was the unfore-

seeable real estate market downturn in 1989. See, e.g., Reid v. 

Spadone Mach. Co., 404 A.2d 1094, 1099 (N.H. 1979) (noting that a 

"superseding cause" may sever proximate-causation chain).

Therefore, they say, CMB failed to produce sufficient evidence

that its lost sales revenues were proximately caused by the

defective heating systems. Once again we conclude that appel-

lants failed to preserve these arguments before the district

court.5
 

4Our waiver ruling analysis is corroborated by the rationale
upon which the district court relied in denying appellants' post-
verdict motion for judgment as a matter of law: "[t]his is not a
case in which Plaintiff CMB or its subrogee, St Paul's, sought to
recover for damage to or loss of the defective products them- 
selves, but rather sought recovery for damage to CMB's condomini- 
um project and business occasioned by the defective condition of
the hot surface ignitors." CMB Constr. Co. v. Weil-McLain, No. 
90-181-M, slip op. at 3 (D.N.H. Dec. 30, 1994) (emphasis in
original).

5Appellants cite to their pleadings, which suggest the
embryonic defense that the damages sustained by CMB were caused
by undesignated "third parties" over whom appellants exercised no
control. Appellants likewise point to a pretrial motion in 
limine, wherein they argued that experts would "detail the manner 
in which the financial losses and failure of the units to sell
are related to the burst pipes as opposed to the economic rever-
sals suffered by the economy in general." Although this state-
ment might suggest a defensive stance that some of CMB's damages 
might eventually prove not to have been attributable to the
"product" defect, in no sense does it suggest that the evidence
adduced at trial would establish that the economic downturn
constituted a superseding cause which entirely severed the chain 
of causation set in motion by the malfunctioning product. 

8

Finally, appellants argue that the district court erred

in finding that CMB had adduced sufficient evidence as to the

amount of consequential damages sustained. They assert that the 

court misapplied New Hampshire law, which has sometimes required

plaintiffs in so-called "lost profits" cases to prove the amount

of actual damages to "a reasonable certainty," rather than by a

mere preponderance of the evidence. See, e.g., Great Lakes 

Aircraft Co. v. City of Claremont, 608 A.2d 840 (N.H. 1992). 

Appellants argue that the $1,400,400 consequential damages award

was based on pure speculation. They point out that only four of

the twenty-six units had been sold, or were under contracts of

sale, at the time the defective heating systems failed; that only

one among the four condominium sales in process failed to close

thereafter; and, further, that CMB's evidence that other

condominium units in the Loon Mountain area sold during the

winter of 1988-1989 did not prove that any specific buyers 

existed at that time who would have been prepared to purchase

these particular units but for the structural damage.6 

We have held that the heightened burdens of proof

called for in such New Hampshire "lost profits" cases as Great 
 

6Considerable confusion attended the parties' use of the
terms "lost profits" and "lost sales [revenues]," as well as the
question whether these terms have distinctive connotations which
might affect the burden of proof under the Great Lakes decision. 
Appellants point out, however, that we have noted that the term
"lost profits" is "too mutable" to serve as a reliable indicium
of the applicability of Great Lakes. See Bezanson, 29 F.3d at 21 
n.6. Since appellants did ask the district court to require
proof of consequential damages to a "reasonable certainty," and
explicitly cited Great Lakes, we will assume that this claim was 
duly preserved for appeal.

9

Lakes pertain exclusively to damages calculations that involve a 

"complex conjectural judgment" that "depend[s] upon how a variety

of variables affecting a stream of revenues and expenses would

have played out over time if the [defendant's wrongdoing had not

occurred.]" Bezanson, 29 F.3d at 21. Whatever label the parties 

might assign to CMB's consequential damages, state law offers no

bright-line or "hard-edged" test for determining whether a

claimant must prove damages by more than a mere preponderance of

the evidence. Id. at 21 n.6. Each case essentially turns on its 

particular circumstances. We think the damages sustained by CMB

are not in the Great Lakes mold.  

First, its condominium units fully completed prod-

ucts were already on the open market in 1988. Second, before

appellants' defective products ever failed, CMB had received

serious "package offers" for all twenty-six units, but decided to

attempt to generate greater sales revenues by marketing the units

individually during the auspicious 1988-89 skiing season. Third,

roughly comparable condominium units in the Loon Mountain area

did sell briskly during the 1988-1989 season, while CMB was

repairing its damaged units. Fourth, notwithstanding the ensuing

economic downturn, CMB's condominiums did sell during the very

next "peak" selling season, but at reduced prices. The relative- 

ly short interval between the lost selling season and the

actual selling season contrasts sharply with the attenuation

evidenced in the "lost profit" cases cited by appellants. Cf. 

Great Lakes, 608 A.2d at 857 ("At trial, [plaintiff's] damages 

10

expert [] based his lost profit estimates on a hypothetical 

business entity producing Great Lakes and Champion aircraft and 

on forecasted profits from 1986 through 1995."). Since these 

factors bring this case more in line with the "specific [frus-

trated] transaction" in Bezanson, which would have gone forward 

on fairly predictable terms but for defendant's wrongful act,

Bezanson, 29 F.3d at 21, we think it quite clear that the jury in 

this case was not presented with an especially "complex conjec-

tural judgment." 

The district court judgment is affirmed.  The district court judgment is affirmed. 

11