USCA1 Opinion

 

 December 6, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1265 CMB CONSTRUCTION COMPANY, INC., Plaintiff, Appellee, v. WEIL-McLAIN, ETC., Defendant, Appellant.  ____________________ No. 95-1343 CMB CONSTRUCTION COMPANY, INC., Plaintiff, Appellee, v. EMERSON ELECTRIC CO., ETC., Defendant, Appellant.  ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ___________________  ____________________ Selya and Cyr, Circuit Judges, ______________ and Casellas,* District Judge. ______________  ____________________  ____________________ *Of the District of Puerto Rico, sitting by designation. James D. Crawford, with whom Jennifer DuFault James and Schnader, _________________ ______________________ _________ Harrison, Segal & Lewis were on brief for appellants. _______________________ Wilbur A. Glahn III, with whom Kelly A. Ayotte, McLane, Graf, ___________________ _______________ _____________ Raulerson & Middleton Professional Association, Normandin, Cheney & ______________________________________________ ___________________ O'Neil and Duncan J. Farmer were on brief for appellee. ______ ________________  ____________________ December 8, 1995  ____________________ Per Curiam. In 1988, CMB Construction Company, Inc. Per Curiam. __________ ("CMB") completed a condominium project in New Hampshire's Loon Mountain ski area, and placed all twenty-six units on the market. The months of December through April are the prime season for condominium sales in the area. The heating systems installed in the condominiums failed during December 1988 and January 1989, which caused water pipes to freeze and burst, and resulted in extensive water and structural damage to thirteen condominium units. The needed repairs on the damaged units were not complet- ed until May 1989. Although CMB sold the damaged units during the following winter (1989-1990), less advantageous market conditions brought prices well below those which had prevailed during the 1988-89 season. CMB promptly initiated a product liability action in New Hampshire federal district court, against appellant The Marley Company, Weil-McLain Division ("Weil-McLain"), which manufactured the heating systems, and against appellant Emerson Electric Company ("Emerson"), which manufactured the "surface ignitors" incorporated in the heating systems. CMB sought compensatory damages for its repair and replacement costs, as well as consequential damages consisting of the reduced condomin- ium sale revenues resulting from the one-year delay associated with repairing the thirteen damaged units. Relying on a strict liability theory, CMB ultimately obtained a $503,597.22 jury award for its repair and replacement costs, and a $1,400,400 consequential damages award. Appellants unsuccessfully moved for 3 judgment as a matter of law and for a new trial. On appeal, they challenge only the consequential damages award.1  Although the district court ruling denying the Rule 50(b) motion for judgment as a matter of law is subject to plenary review, the jury verdict will not be set aside unless no rational factfinder could have reached the same verdict on the evidence adduced at trial. See Bezanson v. Fleet Bank-N.H., 29 ___ ________ ________________ F.3d 16, 20 (1st Cir. 1994). A district court ruling denying a motion for new trial will be upheld absent an abuse of discretion which results in a "miscarriage of justice." See Lama v. Borras, ___ ____ ______ 16 F.3d 473, 477 (1st Cir. 1994). We review both rulings by considering the evidence and all rational inferences therefrom in the light most favorable to the nonmoving party, viz., CMB, but making allowance for evidentiary weight and credibility determi- nations on the latter motion only. See Levesque v. Anchor Motor ___ ________ ____________ Freight, Inc., 832 F.2d 702, 703 (1st Cir. 1987). _____________ The first contention pressed by appellants is that New Hampshire strict liability law does not permit a claimant in CMB's position to recover consequential damages based exclusively on "commercial losses." Like the majority of jurisdictions, New Hampshire has endorsed the so-called "economic loss" doctrine, see, e.g., Public Serv. Co. of N.H. v. Westinghouse Elec. Corp., ___ ____ ________________________ ________________________ 685 F. Supp. 1281 (D.N.H. 1988), which holds that damages relat- ing to product liability whether based in negligence or strict  ____________________ 1St. Paul's Insurance Company, CMB's subrogee, received the $503,597.22 in compensatory damages. Appellants settled with St. Paul's during this appeal. 4 liability normally are not recoverable as compensation for ___ injury exclusively caused to the defective "product" itself; that __ ___ _________ _______ ______ is, where the defect in the failed product causes no collateral "physical" damage, either to the person of the consumer or anyone else, nor to any property other than the defective "product" _____ ____ ___ _________ _______ itself. See East River S.S. Corp. v. Transamerica DeLaval, 476 ______ ___ ______________________ _____________________ U.S. 858, 866, 868, 870 (1986) (surveying various rules, and adopting the majority rule for use in admiralty cases). For example, if a defective widget simply malfunctions, recovery for this sort of insurable loss the diminution in the value of the _________ widget normally must be based in contract or warranty law, not ________ ________ tort liability. Id. at 870-71 (noting that such "insurable" ___ losses "essentially [involve] the failure of the purchaser to receive the benefit of its bargain the core concern of con- tract law"). This traditional tort-law bar to "economic loss" ________ ___ __ ________ ____ recoveries presumably would extend also to preclude recoveries __________ for consequential damages attributable to the defective-product malfunction, including loss of business opportunities. Id. at ___ 874 (noting that warranty law is better suited to redressing such losses, since it limits consequential damages, such as lost profits, to those which are a "foreseeable result of the breach").  The only pre-verdict exegesis offered by appellants below on this issue appears in their pretrial memorandum support- ing a motion to dismiss the claims of CMB and its insurer. See ___ 5 supra note 1.2 Appellants repeatedly stressed that the New _____ Hampshire law relating to "economic loss" was already "clear"  and that the New Hampshire state courts had "long held" strict liability unavailing where a claimant alleges only "damage to ______ __ the product itself and economic losses caused thereby" and there ___ _______ ______ is no allegation of "bodily injury or serious threat or probabil- ity of bodily injury." Memorandum, at 2-3. See Fed. R. Civ. P. ___ 50(a) ("motion shall specify . . . the law and the facts on which the moving party is entitled to judgment"). Thus, given the evidence of extensive structural damage to the condominium units, __________ ______ __ ___ ___________ _____ appellants' argument before the district court necessarily ___________ implied that appellants were relying on the premise that the _______ "product" at issue was the condominium units, not merely the ___________ _____ heating systems. _______ _______ Their argument on appeal has been transformed, however. Following a passing reference to the highly dubious contention that the condominium units must be considered the integrated "product" which implicated settled New Hampshire law, see Brief _______ ___  ____________________ 2When they argued their motion for judgment as a matter of law at the close of the evidence, see Fed. R. Civ. P. 50(a), ___ appellants simply referred to their pretrial motion: "We do not waive our right to our position expressed in our motion for summary judgment (sic) that in a case of pure economic loss there is no such thing as a products liability claim." Their attempt to avoid waiver by relying on their post-verdict motions under ____ Rule 50(b) is unavailing as well. See Perdoni Bros., Inc. v. ___ ____________________ Concrete Systs., Inc., 35 F.3d 1, 3 (1st Cir. 1994) ("The law is _____________________ crystal clear that `a party may not base its motion for a judg- ment n.o.v. on a ground that was not argued in its [pre-verdict] motion for directed verdict.'").  6 for Appellant at 13 n.3,3 appellants contend, in the alterna- tive, that this case presents a question of first impression _____ __________ under New Hampshire law. Id. at 15. Thus, even if the "product" ___ consisted of the heating systems only, and even if the heating- system malfunctions caused collateral damage to the condominium __________ units (i.e., to property other than the product itself), appel- lants now argue that the New Hampshire courts surely would "extend" the East River rationale to these claims. Consequently, __________ whether or not it was proper to award damages to CMB's insurer for the repair/replacement costs under a strict liability theory, see supra note 1 and accompanying text, appellants now say that ___ _____ CMB cannot use strict liability to recover consequential "commer- cial" losses flowing from the malfunctioning of the heating systems. Their revisionist argument on appeal never broached below urges nothing less than that New Hampshire's "economic loss" doctrine should be extended beyond the context of cases in ______ which the defective product causes damage only to the product itself. We think it too ambitious an initiative to be enter-  ____________________ 3Appellants waived any claim that the condominium units were the "product," both on appeal, see FDIC v. Bay St. Dev. Corp., 32 ___ ____ __________________ F.3d 636, 639 n.3 (1st Cir. 1994) (appellate arguments presented in perfunctory fashion without developed argumentation are deemed waived), and before the district court, see Lee v. Life Ins. Co. ___ ___ _____________ of N.A., 23 F.3d 14, 20 n.11 (1st Cir.), cert. denied, 115 S. Ct. _______ _____ ______ 427 (1994); see also Perdoni, 35 F.3d at 3 ("Sweeping invocations ___ ____ _______ of conclusory theories or abstract principles will not suffice" for pre-verdict Rule 50 motion). Moreover, it seems most likely that their double waiver traces to the complete lack of case authority supporting their contention. See East River, 476 U.S. ___ __________ at 867 (normally, "product" is the "integrated package" sold to the consumer).  7 tained for the first time on appeal.4 See, e.g., Lee v. Life ___ ____ ___ ____ Ins. Co. of N.A., 23 F.3d 14, 20 n.11 (1st Cir.), cert. denied, ________________ _____ ______ 115 S. Ct. 427 (1994).  Second, appellants contend that the superseding and efficient cause of the damages sustained by CMB was the unfore- seeable real estate market downturn in 1989. See, e.g., Reid v. ___ ____ ____ Spadone Mach. Co., 404 A.2d 1094, 1099 (N.H. 1979) (noting that a _________________ "superseding cause" may sever proximate-causation chain). Therefore, they say, CMB failed to produce sufficient evidence that its lost sales revenues were proximately caused by the defective heating systems. Once again we conclude that appel- lants failed to preserve these arguments before the district court.5  ____________________ 4Our waiver ruling analysis is corroborated by the rationale upon which the district court relied in denying appellants' post- verdict motion for judgment as a matter of law: "[t]his is not a case in which Plaintiff CMB or its subrogee, St Paul's, sought to recover for damage to or loss of the defective products them- _________ ________ _____ selves, but rather sought recovery for damage to CMB's condomini- ______ um project and business occasioned by the defective condition of the hot surface ignitors." CMB Constr. Co. v. Weil-McLain, No. ______________ ___________ 90-181-M, slip op. at 3 (D.N.H. Dec. 30, 1994) (emphasis in original). 5Appellants cite to their pleadings, which suggest the embryonic defense that the damages sustained by CMB were caused by undesignated "third parties" over whom appellants exercised no control. Appellants likewise point to a pretrial motion in __ limine, wherein they argued that experts would "detail the manner ______ in which the financial losses and failure of the units to sell are related to the burst pipes as opposed to the economic rever- sals suffered by the economy in general." Although this state- ment might suggest a defensive stance that some of CMB's damages ____ might eventually prove not to have been attributable to the "product" defect, in no sense does it suggest that the evidence adduced at trial would establish that the economic downturn constituted a superseding cause which entirely severed the chain ________ _______ of causation set in motion by the malfunctioning product.  8 Finally, appellants argue that the district court erred in finding that CMB had adduced sufficient evidence as to the amount of consequential damages sustained. They assert that the ______ court misapplied New Hampshire law, which has sometimes required plaintiffs in so-called "lost profits" cases to prove the amount of actual damages to "a reasonable certainty," rather than by a mere preponderance of the evidence. See, e.g., Great Lakes ___ ____ ___________ Aircraft Co. v. City of Claremont, 608 A.2d 840 (N.H. 1992). _____________ __________________ Appellants argue that the $1,400,400 consequential damages award was based on pure speculation. They point out that only four of the twenty-six units had been sold, or were under contracts of sale, at the time the defective heating systems failed; that only one among the four condominium sales in process failed to close thereafter; and, further, that CMB's evidence that other condominium units in the Loon Mountain area sold during the winter of 1988-1989 did not prove that any specific buyers ________ existed at that time who would have been prepared to purchase these particular units but for the structural damage.6 __________ We have held that the heightened burdens of proof called for in such New Hampshire "lost profits" cases as Great _____  ____________________ 6Considerable confusion attended the parties' use of the terms "lost profits" and "lost sales [revenues]," as well as the question whether these terms have distinctive connotations which might affect the burden of proof under the Great Lakes decision. ___________ Appellants point out, however, that we have noted that the term "lost profits" is "too mutable" to serve as a reliable indicium of the applicability of Great Lakes. See Bezanson, 29 F.3d at 21 ___________ ___ ________ n.6. Since appellants did ask the district court to require proof of consequential damages to a "reasonable certainty," and explicitly cited Great Lakes, we will assume that this claim was ___________ duly preserved for appeal. 9 Lakes pertain exclusively to damages calculations that involve a _____ "complex conjectural judgment" that "depend[s] upon how a variety of variables affecting a stream of revenues and expenses would have played out over time if the [defendant's wrongdoing had not occurred.]" Bezanson, 29 F.3d at 21. Whatever label the parties ________ might assign to CMB's consequential damages, state law offers no bright-line or "hard-edged" test for determining whether a claimant must prove damages by more than a mere preponderance of the evidence. Id. at 21 n.6. Each case essentially turns on its ___ particular circumstances. We think the damages sustained by CMB are not in the Great Lakes mold.  ___________ First, its condominium units fully completed prod- ucts were already on the open market in 1988. Second, before appellants' defective products ever failed, CMB had received serious "package offers" for all twenty-six units, but decided to attempt to generate greater sales revenues by marketing the units individually during the auspicious 1988-89 skiing season. Third, roughly comparable condominium units in the Loon Mountain area did sell briskly during the 1988-1989 season, while CMB was repairing its damaged units. Fourth, notwithstanding the ensuing economic downturn, CMB's condominiums did sell during the very next "peak" selling season, but at reduced prices. The relative- ____ ly short interval between the lost selling season and the actual selling season contrasts sharply with the attenuation evidenced in the "lost profit" cases cited by appellants. Cf. ___ Great Lakes, 608 A.2d at 857 ("At trial, [plaintiff's] damages ____________ 10 expert [] based his lost profit estimates on a hypothetical _ ____________ business entity producing Great Lakes and Champion aircraft and ________ ______ on forecasted profits from 1986 through 1995."). Since these ____ ____ _______ ____ factors bring this case more in line with the "specific [frus- trated] transaction" in Bezanson, which would have gone forward ________ on fairly predictable terms but for defendant's wrongful act, Bezanson, 29 F.3d at 21, we think it quite clear that the jury in ________ this case was not presented with an especially "complex conjec- tural judgment."  The district court judgment is affirmed.  The district court judgment is affirmed. ___ ________ _____ ________ __ ________ 11