**FEDERAL DEPOSIT INSURANCE CORPORATION, etc., Plaintiff, Appellee,**

v.

**BAY STREET DEVELOPMENT CORP., et al., Defendants, Appellants.**

**William J. Byrne, Jr., and Joseph F. Timilty, Defendants, Appellants.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, etc. Plaintiff, Appellee,**

v.

**BAY STREET DEVELOPMENT CORP. and John Ryan, Defendants, Appellants.**

Nos. 93–2237, 93–2238.

United States Court of Appeals, First Circuit.

Heard May 6, 1994.

Decided Aug. 26, 1994.

Frank L. McNamara, Jr., with whom J. Alan Mackay, Boston, MA, was on brief, for Chapter 7 Trustee, et al.

Jeffrey M. Lovely, with whom Robert A. Murphy and Casner & Edwards, Boston, MA, were on brief, for William Byrne and Joseph Timilty.

James W. Stoll, with whom Emanuel Alves and Brown, Rudnick, Freed & Gesmer, P.C., Boston, MA, were on brief, for FDIC.

BREYER,* Chief Judge, CYR and BOUDIN, Circuit Judges.

CYR, Circuit Judge.

The Federal Deposit Insurance Corporation (FDIC), as receiver, obtained summary judgment against defendants-appellants in an action to recover amounts due a failed savings bank on various loans and loan guaranties. On appeal, defendants contend that their defenses to FDIC's claims are not barred by *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its statutory counterpart, 12

---

* Chief Judge Stephen Breyer heard oral argument in this matter, but did not participate in the drafting or the issuance of the panel opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

U.S.C. § 1823(e). We affirm the district court judgment.

# I

## *BACKGROUND* [1]

In March 1987, defendant-appellant Bay Street Development Corporation (Bay Street) entered into a Loan Agreement with First Mutual Bank for Savings (FMB) for the purpose of financing a condominium construction project. The Loan Agreement set the *maximum* loan principal at $9 million, with disbursements to be made over time subject to certain conditions specified in the Loan Agreement. Contemporaneously, the Bay Street principals, defendants-appellants John Ryan,[2] William J. Byrne and Joseph F. Timilty, jointly and severally guarantied the construction loan to the extent of $2.5 million (the Multiple Guaranty). Pursuant to a written side agreement, Ryan promised to indemnify Byrne and Timilty for any liability incurred under the Multiple Guaranty (the Indemnification Agreement). At the time the Indemnification Agreement was executed, Ryan had a net worth of $5.7 million. FMB's records contain no reference to the Indemnification Agreement.

In June 1987, Bay Street failed to satisfy certain conditions which constituted default events under the Loan Agreement. Bay Street attempted to negotiate with FMB to cure the defaults. Finally, at a meeting on February 6, 1989 (the Arnone meeting), FMB vice-president Richard Arnone informed Ryan that FMB would release the undisbursed balance of the $9 million construction loan, notwithstanding any past or future Bay Street defaults, if Ryan would provide FMB with an additional guaranty (the Additional Guaranty). On February 23, Ryan executed the Additional Guaranty, which expressly stated that he was guarantying an additional $6.5 million in order "to induce [FMB] to make *further loan advances pursuant to the [L]oan [A]greement.*" (emphasis added). FMB thereupon advanced

Bay Street another $1.5 million, bringing total advances under the Loan Agreement to $6 million. By May 1989, Bay Street had yet to cure its previous defaults under the Loan Agreement. At about the same time, Ryan notified FMB that he was repudiating both the Multiple Guaranty and the Additional Guaranty. As Ryan and Bay Street were in default, FMB demanded payment in full pursuant to the terms of the Loan Agreement and the loan guaranties. The defendants rejected FMB's demand.

In June 1989, FMB initiated the present action in Massachusetts Superior Court against Bay Street for breach of the Loan Agreement (Count 1); Ryan, Byrne and Timilty for breach of the Multiple Guaranty (Count 2); and Ryan for breach of the Additional Guaranty (Count 3). Bay Street and Ryan filed counterclaims for, *inter alia,* fraud in the inducement and breach of the Arnone meeting agreement. In April 1990, the superior court granted summary judgment for FMB on Counts 1 and 2, rejecting the defense interposed by Byrne and Timilty that FMB had released them from the Multiple Guaranty by accepting the Additional Guaranty, which effected an unauthorized alteration of the Loan Agreement. The superior court denied summary judgment on Count 3, on the ground that a genuine dispute remained as to whether FMB had induced the Additional Guaranty through fraud.

In June 1991, after FMB had been placed in receivership, FDIC removed the action to federal district court, then moved for summary judgment on Count 3 and on the remaining Bay Street and Ryan counterclaims. Ryan and Bay Street countered with a motion for reconsideration of the superior court's summary judgment rulings on Counts 1 and 2. In due course, the district court granted summary judgment ·for FDIC on Count 3 and on defendants' counterclaims,

---

1. The material facts are related in the light most favorable to defendants-appellants, against whom summary judgment was granted. *See Velez–Gomez v. SMA Life Assur. Co.,* 8 F.3d 873, 874–75 (1st Cir.1993).

2. J. Christopher Robinson, trustee in bankruptcy of the chapter 7 estate of John Ryan, has been substituted as a party. *See* Fed.R.App.P. 43.

and denied the motion for reconsideration on Counts 1 and 2. This appeal ensued.[3]

## II

### DISCUSSION

#### A. Summary Judgment Standard

■ A state court summary judgment order may be modified or vacated following removal of the action, *see Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 842 (1st Cir.1988); 28 U.S.C. § 1450, upon a determination that it does not comport with Fed. R.Civ.P. 56, *see RTC v. Northpark Joint Venture*, 958 F.2d 1313, 1316 (5th Cir.1992), *cert. denied*, ––– U.S. –––, 113 S.Ct. 963, 122 L.Ed.2d 120 (1993). As with any summary judgment order, *id.*, we review the district court ruling *de novo*, employing the identical summary judgment criteria incumbent upon the court below, *Velez–Gomez*, 8 F.3d at 874–75. Thus, summary judgment will be upheld if the record, viewed in the light most favorable to the nonmoving party, discloses no trialworthy issue of material fact, and the moving party has demonstrated its entitlement to judgment as a matter of law. *Id.*

#### B. No. 93–2237: Bay Street and Ryan[4]

Bay Street and Ryan contend on appeal, as before the district court, that a material issue of fact remained on Count 3, concerning whether FMB, through Arnone, orally promised to release the *entire* undisbursed balance of its loan commitment under the Loan Agreement, notwithstanding any past and future defaults by Bay Street. Bay Street and Ryan argue that the following language in the Additional Guaranty was ambiguous, *viz.*, "Ryan ... to induce [FMB] to make further loan advances pursuant to the loan agreement referred to below ... hereby unconditionally guarantees ... $6,500,000." Based

on Ryan's affidavit attesting to the Arnone meeting, *see supra* p. 638, Bay Street and Ryan argue that a jury reasonably could find that the above-quoted language represented a commitment by FMB to advance the entire undisbursed balance ($4.5 million) it originally agreed to lend under the Loan Agreement, without regard to past or future defaults by Bay Street.

■ Their defense is not sustainable against FDIC, *see D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); 12 U.S.C. § 1823(e), absent a reasonably explicit *written* agreement in FMB's records to this effect. *See FSLIC v. Two Rivers Assocs., Inc.*, 880 F.2d 1267, 1275–76 (11th Cir.1989) (on similar facts, inquiring whether writings contained explicit acceptance of the obligation to fund the entire project). The only writing arguably evidencing an ambiguous commitment of this type is the Additional Guaranty itself, which merely states that Ryan provided the Additional Guaranty "to induce FMB to make further loan advances." Bay Street and Ryan implicitly concede as much by maintaining that "the meaning and import of the [quoted] phrase is not clear from the face of the document drawn by [FMB] in which it appears, or from any other document referred to therein."

■ Absent extrinsic evidence, the Additional Guaranty cannot be read to require FMB to advance *all* loan funds remaining undisbursed under the Loan Agreement. *See Sweeney v. RTC*, 16 F.3d 1, 5 (1st Cir. 1994) (*per curiam*) (contract terms were "far too ambiguous, absent extraneous support, to establish an agreement to fund further construction. At most, they reflect an intention to provide further funds.") (footnote omitted),

---

**3.** Ryan challenges the district court order insofar as it rejected his defense to the Additional Guaranty, but does not appeal from the dismissal of his counterclaims. Byrne and Timilty challenge the rejection of their defense to the Multiple Guaranty. Bay Street's claims on appeal track Ryan's, save that Bay Street also asserts that the district court erred in finding no trialworthy issue relating to Bay Street's state-law counterclaims charging bad faith and unfair dealing. These latter claims are deemed waived, as they are unsupported by any developed argumenta-

tion. *See, e.g., RTC v. Gold*, 30 F.3d 251, 253 (1st Cir.1994).

**4.** We bypass the jurisdictional question raised by FDIC in connection with this appeal. *See Norton v. Matthews*, 427 U.S. 524, 532, 96 S.Ct. 2771, 2775–76, 49 L.Ed.2d 672 (1976) (jurisdictional question may be passed over where ruling on merits would lead to same result). *See also* note 2 *supra*.

*petition for cert. filed,* 62 U.S.L.W. 3775 (U.S. May 2, 1994) (No. 93–1782); *see also FDIC v. Hamilton,* 939 F.2d 1225, 1231 (5th Cir.1991) (the § 1823(e) mandate—that promises be "in writing"—only permits enforcement of obligations set out on the face of the instrument). And, of course, extrinsic evidence of additional terms is inadmissible against FDIC. *See Two Rivers,* 880 F.2d at 1276 ("[O]ne ambiguous reference to a further construction loan is not sufficient to allow [defendant] to advance defenses against the FSLIC about an agreement to fund the entire project."); *RTC v. Daddona,* 9 F.3d 312, 319 (3d Cir.1993) ("[T]he essential terms . . . [of an agreement must] appear plainly on the face of that obligation.").[5]

Ryan counters that his breach of contract defense is based on the bilateral nature of the obligations assumed under the Additional Guaranty. *See Howell v. Continental Credit Corp.,* 655 F.2d 743, 746–47 (7th Cir.1981) (*D'Oench* inapplicable where face of instrument whose terms FDIC seeks to enforce manifests bilateral obligations that form the basis of the opposing party's defense). *Howell* is inapposite to the present context, however.

The defenses relied on in *Howell* were in no respect dependent on parol agreements, *see id.* at 747, whereas Ryan concedes that the language in the Additional Guaranty—"to induce [FMB] to make further loan advances"—could not have afforded FDIC explicit notice of the *specific terms* of the alleged FMB waiver of past and future defaults, absent resort to the parol evidence arising out of the Arnone meeting. *See supra* pp. 638, 639. Thus, reliance on the so-called *Howell* exception is misplaced. *See FDIC v. O'Neil,* 809 F.2d 350, 354 (7th Cir. 1987) (*Howell* exception inapplicable where

bank's obligation did not appear explicitly on face of document FDIC sought to enforce); *accord Hamilton,* 939 F.2d at 1231 (*Howell* exception inapplicable as face of note did not manifest bilateral obligations); *Two Rivers,* 880 F.2d at 1275 ("This is not a case like [*Howell*] where the leases on which the suit was based 'clearly manifest[ed] the bilateral nature of the lessee's and lessor's rights and obligations.' ").

■ The legislative policy underlying the *D'Oench* doctrine corroborates the district court ruling as well. A primary aim of *D'Oench* is to enable bank examiners to rely on bank *records* in assessing the value of bank assets. *See Langley v. FDIC,* 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). There is no indication that the Arnone meeting was mentioned, let alone memorialized, in any FMB record. *See Timberland Design, Inc. v. First Serv. Bank for Sav.,* 932 F.2d 46, 48 (1st Cir.1991) (*per curiam*) ("*D'Oench, Duhme* . . . favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can.") (citations omitted). The district court did not err in awarding FDIC summary judgment against Bay Street and Ryan.

### C. *No. 93–2238: Byrne and Timilty*

■ Appellants Byrne and Timilty challenge the summary judgment order on the ground that the Additional Guaranty acquired by FMB undermined the terms of the Multiple Guaranty and the Loan Agreement without their consent.[6] *Cf. Provident Co–Op Bank v. James Talcott, Inc.,* 358 Mass. 180, 260 N.E.2d 903, 910 (1970) ("[A] substantial

---

5. Altogether apart from *D'Oench, Duhme,* evidence of prior negotiations is inadmissible under Massachusetts law to alter or contradict the terms of a written agreement. *See Boston Edison Co. v. Federal Energy Reg. Comm'n,* 856 F.2d 361, 365 (1st Cir.1988) (Massachusetts parol evidence rule). The Additional Guaranty expressly provides that "[u]pon the occurrence of any event of Default (*as that term is defined in the Loan Agreement* ) in the payment or performance of any of [Bay Street's] obligations, [Ryan's] obligations and liabilities hereunder shall become immediately due." (emphasis added). This lan-

guage would appear to foreclose use of the alleged Arnone meeting promise to show that FMB waived its contractual right to declare later defaults.

6. Byrne and Timilty make the related argument that FMB breached the Multiple Guaranty provision prohibiting its alteration without the written consent of all three guarantors. As this argument was never raised, either in state court or the district court, we decline to consider it. *See Gold,* 30 F.3d at 253.

change in the conditions to which a bond relates, made without the knowledge and consent of the surety, discharges him from further liability.") (applying Mass. law; citations omitted); *FDIC v. Manion,* 712 F.2d 295, 297 (7th Cir.1983) (noting general acceptance of this rule). Their resourceful theory is that the Indemnification Agreement, as a practical matter, effectively insulated them from risk under the Multiple Guaranty, *see supra* p. 638, because Ryan's net worth, approximating $5.7 million at the time the Indemnification Agreement was executed, provided ample wherewithal to fund Ryan's commitment to indemnify them for any liability incurred under the Multiple Guaranty. But because the Additional Guaranty increased the total exposure on Ryan's personal guaranties to $9 million (the $2.5 million Multiple Guaranty plus the $6.5 million Additional Guaranty), well beyond his total net worth, Byrne and Timilty insist that their *actual* exposure on the Multiple Guaranty was thereby increased from zero to $2.5 million. Thus, they argue, FMB materially modified the Multiple Guaranty to their detriment by obtaining the Additional Guaranty from Ryan.

The problem with this appealing argument is that it is premised on a revisionist view of the Indemnification Agreement; hence, it too is precluded under the *D'Oench, Duhme* doctrine, due to the absence of any FMB record substantiating an obligation on the part of FMB to refrain from undermining the Multiple Guaranty in this manner. Further, even Byrne and Timilty make no claim that *either* Ryan *or* FMB was under any contractual or other legal obligation to refrain from increasing Ryan's liability to FMB or to obtain the approval of Byrne and Timilty before doing so. *See D'Oench, Duhme & Co.,* 315 U.S. at 460, 62 S.Ct. at 680–81.

### III

### *CONCLUSION*

For the foregoing reasons, the district court judgment must be affirmed.

*Affirmed.*