RTC MORTGAGE TRUST 1994–S3, by its attorney-in-fact TROTTER KENT, INC., Plaintiff,

v.

GUADALUPE PLAZA, a New Mexico Joint Venture, Ronald Brown, Jane Brown, Elmer Sproul, Lesley Sproul, Public Service Co. of New Mexico, Guadalupe Plaza, L.P., Madrid Construction Co., Seay Brothers, Inc., and Brooks, Hensley, Creager Architects, Defendants.

GUADALUPE PLAZA, a New Mexico Joint Venture, Ronald Brown, Jane Brown, Elmer Sproul, and Lesley Sproul, Counter-claimants,

v.

RTC MORTGAGE TRUST 1994– S3, Counter-defendant.

GUADALUPE PLAZA, a New Mexico Joint Venture, Ronald Brown, Jane Brown, Elmer Sproul, and Lesley Sproul, Third-party plaintiffs,

v.

RESOLUTION TRUST CORPORATION, Third-party defendant.

No. CIV 95–507 BB/LFG.

United States District Court, D. New Mexico.

Feb. 23, 1996.

Deborah R. Goncalves, Albuquerque, NM, for Plaintiff.

· Rebecca Sitterly, Albuquerque, NM, for Defendants.

### *MEMORANDUM OPINION*

BLACK, District Judge.

This Opinion addresses several pending motions. The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that (1) Plaintiff's August 8, 1995 motion for summary judgment (Doc. 58) should be DENIED, (2) Plaintiff's September 28, 1995 objections to decision of United States Magistrate (Doc. 79) should be DENIED, and (3) Defendants' October 5, 1995 motion for partial summary judgment (Doc. 83) should be GRANTED IN PART and DENIED IN PART.

### I. Facts and Procedural History

Defendant Guadalupe Plaza ("Guadalupe") is a New Mexico joint venture formed by Defendants Ronald D. Brown, Jane W. Brown, Elmer C. Sproul, and Lesley G. Sproul. On January 12, 1984, Guadalupe executed and delivered a promissory note ("the Note") payable to the order of the New Mexico Federal Savings and Loan Association ("Old Association") in the principal amount of $617,000. To secure payment of the Note, Guadalupe executed and delivered a mortgage ("the Mortgage") on its property located at 6125 Guadalupe Road, N.W., Albuquerque, New Mexico ("Guadalupe Road Property"). According to the Note, from

August 1, 1984 to June 1, 1989, Guadalupe was to pay the Old Association monthly installments of $6,970.23, consisting of principal and interest calculated at 13.3% per annum. All remaining unpaid principal and interest became due on July 1, 1989.

Guadalupe executed the Note in exchange for a construction loan from the Old Association to finance improvements at the Guadalupe Road Property. *Inter alia,* Guadalupe used the proceeds of the loan to build a branch bank building ("Bank Building"), which Guadalupe leased to the Old Association. The parties signed the lease governing this transaction ("the Lease") on September 5, 1984. According to the Lease, the Old Association would rent the Bank Building from July 1, 1984 to July 1, 1989, and would have the option to renew the Lease for five subsequent five-year periods. When it signed the Lease, the Old Association also exercised its option to renew the Lease for the first two five-year periods, extending the term of the Lease to July 1, 1999. The Old Association agreed to pay rent in the amount of approximately $6,000 per month, to be calculated "on the basis of a 14.3% per annum return against total Allocated Costs ... up to a maximum Allocated Cost of $500,-000," and to be renegotiated at the beginning of each five-year term. Pl.'s Mem. Supp. Mot. Summ. J. Ex. C at 2.

Defendants assert that the Note, Mortgage, and Lease were all part of a single, integrated transaction wherein the Old Association financed the construction of the Bank Building on the Guadalupe Road Property, and Guadalupe leased the Bank Building back to the Old Association. As such, Defendants argue, the parties' obligations with respect to this transaction are bilateral. Plaintiff disagrees, however, and observes that on the face of the respective instruments, Guadalupe's obligations under the Note and Mortgage, and the Old Association's obligations under the Lease, are independent.

In July 1989, the Office of Thrift Supervision declared the Old Association insolvent and appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as its conservator. In the same month, the FSLIC chartered a new association called the New Mexico Federal Savings Association ("New Association"). The Resolution Trust Corporation ("RTC") became the receiver for the Old Association and the conservator for the New Association on August 9, 1989, pursuant to the newly-effective Financial Institutions Reform Recovery and Enforcement Act ("FIRREA"). The RTC became the receiver for the New Association on May 31, 1990.

The RTC continued to make payments to Guadalupe under the Lease until the summer of 1990. Guadalupe, in turn, continued to make payments to the RTC on the Note until the RTC ceased to make payments under the Lease. In early 1990, Guadalupe and the RTC discussed whether to reduce the monthly payments due under the Lease and the Note respectively. However, these negotiations were unavailing, and on September 18, 1990, Guadalupe informed the RTC that it was in breach of the Lease and owed Guadalupe $798,624.94, the total amount the Old Association was to have paid Guadalupe under the Lease. The RTC repudiated the Lease on December 5, 1990 on behalf of the New Association. The parties dispute whether this repudiation was timely and on behalf of the proper association, and therefore whether it was legally effective.

Plaintiff RTC Mortgage Trust 1994–S3, a Delaware business trust, purchased the Note and Mortgage on August 12, 1994. On May 9, 1995, Plaintiff filed a complaint in this Court, seeking foreclosure of the Mortgage and judgment against Defendants Guadalupe, the Browns, and the Sprouls in the amount of $1,111,969.75 plus interest. Plaintiff moved for summary judgment on August 8, 1995, and Defendants moved for partial summary judgment on October 5, 1995. Also, on September 28, 1995, Plaintiff filed objections to the September 14, 1995 Order of Magistrate Judge Lorenzo F. Garcia. These motions are now before the Court.

## II. Analysis

### A. Plaintiff's August 8, 1995 Motion for Summary Judgment and Defendants' October 5, 1995 Motion for Partial Summary Judgment

"Summary judgment is proper only if the pleadings, depositions, answers to interroga-

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir.1995) (quoting Fed. R.Civ.P. 56(c)). The Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment." *Eaton v. Jarvis Prods. Corp.*, 965 F.2d 922, 925 (10th Cir.1992).

■ In support of its motion for summary judgment, Plaintiff asserts, and Defendants do not dispute, that (1) Plaintiff rightfully possesses the Note and Mortgage, (2) the Note and Mortgage became due on July 1, 1989, and (3) Defendants failed to pay the Note and Mortgage on that date. Plaintiff has therefore established that it is *prima facie* entitled to foreclosure of the Mortgage and judgment on the Note. *Kepler v. Slade*, 119 N.M. 802, 804, 896 P.2d 482, 484 (1995) ("[U]pon default by the mortgagor, a mortgagee … may sue either on the note or foreclose on the mortgage, and may pursue all remedies at the same time or consequently." (citation omitted)).

However, Defendants raise several affirmative defenses in opposition to Plaintiff's *prima facie* case. According to Defendants, the Note, Mortgage, and Lease constituted a single, integrated transaction imposing bilateral obligations on Defendants and the Old Association. Thus, Defendants conclude, when the RTC repudiated its obligations under the Lease, it extinguished Defendants' obligations under the Note and Mortgage. Defendants also argue that as a matter of law, the RTC's repudiation of the Lease was untimely and ineffective under 12 U.S.C. § 1821(e), and Plaintiff therefore remains obligated under the Lease.[1] *See* 12 U.S.C. § 1821(e)(2) (1994). Defendants seek summary judgment on this issue.

Plaintiff claims that Defendants' bilateral obligations defense must fail because it is barred by 12 U.S.C. § 1823(e) and the *D'Oench* doctrine. *See* 12 U.S.C. § 1823(e)

(1994); *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Regarding section 1823(e), Defendants ask the Court to hold that as a matter of law, section 1823(e) does not operate retroactively, and does not apply to their defense because the events on which the defense is premised occurred before the effective date of the statute. Regarding the *D'Oench* doctrine, Defendants argue that genuine issues of material fact exist regarding whether the *D'Oench* doctrine bars its defense. In the alternative, Defendants assert that the Court should defer its determination of whether 12 U.S.C. § 1823(e) or *D'Oench* bars its defense on the basis of Federal Rule of Civil Procedure 56(f). The Court will consider the parties' arguments in turn.

### 1. 12 U.S.C. § 1823(e)

■ The Court will first consider whether 12 U.S.C. § 1823(e) bars Defendants' defense that the Note, Mortgage, and Lease constituted a single transaction imposing bilateral obligations on the parties. Section 1823(e) states that

[n]o agreement which tends to diminish or defeat the interest of the [RTC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [RTC] unless such agreement

(A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

1. Defendants also raise the affirmative defenses of waiver, laches, estoppel, mitigation of damages, offset, and failure of consideration, although they make only fleeting references to each in their briefs.

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). Section 1823(e) became effective on August 9, 1989, well after the formation of the Note, Mortgage, and Lease, which occurred in 1984. The Court must therefore determine whether to apply section 1823(e) to this case retroactively.

The Tenth Circuit has explicitly ruled that courts should not apply section 1823(e) retroactively. *Oklahoma Radio Assocs. v. Federal Deposit Ins. Corp.*, 987 F.2d 685, 695–96 (10th Cir.1993). The *Oklahoma Radio* court first recognized the presumption that "a statute is deemed to be effective only for the future unless a contrary intent appears." *Id.* (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)). The court then determined that the legislative history of the statute did not indicate whether Congress intended for the statute to apply retroactively. *Id.* at 696. Because it found no congressional intent for the statute to apply retroactively, the court concluded that section 1823(e) should "be effective only for the future." *Id.*

Plaintiff asserts that notwithstanding this controlling precedent, the Court should apply section 1823(e) to the present matter. Plaintiff relies on *Landgraf v. USI Film Products*, — U.S. —, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf*, the Supreme Court held that certain provisions of the Civil Rights Act of 1991 did not apply retroactively. *Id.*, — – —, 114 S.Ct. at 1505–08. The *Landgraf* Court affirmed the validity of "the well-settled presumption against application of the class of new statutes that would have genuinely 'retroactive' effect." *Id.* at —, 114 S.Ct. at 1503. The Court then clarified when a statute would have such an effect, *i.e.*, when "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose

new duties with respect to transactions already completed." *Id.* at —, 114 S.Ct. at 1505.

This Court finds that *Landgraf* does not require the Court to ignore the mandate of *Oklahoma Radio*. The application of 12 U.S.C. § 1823(e) to cases such as the one at bar would impose new duties with respect to transactions already completed. For example, in the present matter, the parties essentially completed the transactions involving the Note, Mortgage, and Lease in September 1984, but would not be required to comply with the very specific provisions of section 1823(e) until August 1989. The Court therefore concludes that in the present matter, section 1823(e) would have the "genuinely retroactive effect" discussed in *Landgraf.* The presumption against statutes having such effect prevents the Court from applying section 1823(e) to the present matter.[2] *But see Federal Deposit Ins. Corp. v. Wright*, 942 F.2d 1089, 1095–97 (7th Cir.1991), *cert. denied*, 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992) (applying section 1823(e) retroactively on basis of pre-*Landgraf* decision *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)).

### 2. The *D'Oench* Doctrine

The Court must next consider whether the *D'Oench* doctrine estops Defendants from alleging an agreement with the Old Association that the Note, Mortgage, and Lease would constitute a single transaction imposing bilateral obligations. According to the *D'Oench* doctrine, "the debtor's signing of a facially unqualified note subject to an unwritten and unrecorded condition constitutes an arrangement which is likely to mislead federal insurers in contravention of the policy to protect them in their evaluation of financial institutions." *Mainland Sav. Ass'n v. Riverfront Assocs., Ltd.*, 872 F.2d 955, 956 (10th Cir.1989) (citing *D'Oench*, 315 U.S. at

---

**2.** Even if the Court were to apply section 1823(e) to the present matter, the Court would hold that further discovery is necessary before the Court may properly determine whether section 1823(e) bars Defendants' bilateral obligations defense. The discussion infra regarding the application of Rule 56(f) in the context of the *D'Oench* doctrine applies equally in the context of section 1823(e), and no evidence presently before the Court forecloses the possibility that the alleged bilateral agreement would satisfy the requirements of section 1823(e). *See e.g., Resolution Trust Corp. v. Midwest Fed. Sav. Bank*, 36 F.3d 785, 796–97 (9th Cir.1994) (contemporaneity requirement of section 1823(e) satisfied where loan commitment letter containing 'side agreement' was executed more than two months prior to final loan documents).

456–62, 62 S.Ct. at 678–82). The *D'Oench* doctrine estops the debtor from asserting the "unwritten and unrecorded condition" as a defense should the FSLIC, Federal Deposit Insurance Corporation ("FDIC"), or RTC attempt to collect the note. *Id.*

▮ Many courts have tended to apply the *D'Oench* doctrine strictly, requiring that conditions restricting payment on instruments such as notes, mortgages, or guaranties must be expressed in a "[r]easonably explicit written agreement in [the failed bank's] records." *Federal Deposit Ins. Corp. v. Bay St. Dev. Corp.*, 32 F.3d 636, 639 (1st Cir.1994); *Inn at Saratoga Assocs. v. Federal Deposit Ins. Corp.*, 60 F.3d 78, 82–83 (2d Cir.1995) (*D'Oench* estopped debtors' defense to note that failed bank breached its agreement to subsequently loan them additional sums; unexecuted loan commitments and letter containing conditional promises "are not the type of explicit statements that survive *D'Oench, Duhme* scrutiny"); *Federal Deposit Ins. Corp. v. Hamilton*, 939 F.2d 1225, 1229 (5th Cir.1991) (*D'Oench* estopped debtors' defense to note that failed bank breached its obligations under "unwritten, albeit widespread and prevailing, banking customs"). Plaintiff claims that Defendants have failed to produce any evidence of a "[r]easonably explicit written agreement in [the Old Association's] records" that the Note, Mortgage, and Lease constituted a single transaction imposing bilateral obligations on the parties. *Bay St. Dev. Corp.*, 32 F.3d at 639. Defendants respond that they have produced several letters that should have been in the Old Association's records and that demonstrate the linked nature of the Note, Mortgage, and Lease.

The Court notes that Defendants have produced several documents indicating that the Note, Mortgage, and Lease are connected. Most suggestive, perhaps, is a June 30, 1989 letter ("Carey letter") from Brent Carey, an executive vice president of the Old Association, to a supervisory agent of the Federal Home Loan Bank of Dallas. In this letter, Carey discussed in some detail "two alternatives to the rental adjustment [called for in the Lease upon renewal] that would address the maturing loan to [Guadalupe] as well."

Defs.' Opp. Pl.'s Mot. Summ. J. & Defs.' Cross–Mot. Partial Summ. J. Ex. 4. One of these alternatives, according to the Carey letter, was to "lower the rate on the loan to the current market rate of 12%.... The lease payments would be adjusted downward to continue to yield 1% over the loan rate, or 13%." *Id.* The Carey letter unquestionably suggests that the Old Association perceived the Note, Mortgage, and Lease to be interrelated.

Nevertheless, the Court finds that Defendants have not yet produced evidence of a reasonably explicit written agreement in the Old Association's records that the Note, Mortgage, and Lease constituted a single transaction imposing bilateral obligations which is sufficient to survive summary judgment. Neither the Carey letter, nor any other document, ever explicitly states that the Note, Mortgage, and Lease constituted a single transaction such that Defendants' obligations under the Note and Mortgage were contingent on the fulfillment of the Old Association's obligations under the Lease. *Accord Oklahoma Radio*, 987 F.2d at 692–93 (denying summary judgment where debtors produced evidence that bank records contained two documents explicitly memorializing agreement between debtor and failed bank that bank would renew ninety-day note on sixty-month basis); *Federal Deposit Ins. Corp. v. McFarland*, 33 F.3d 532, 537 (5th Cir.1994) (*D'Oench* did not estop guarantor's defense that failed bank released her guaranty where release was set forth in "letter from the bank's officers setting out the terms of the loan, which was signed by the bank and [debtor] and maintained in the bank's files"); *Howell v. Continental Credit Corp.*, 655 F.2d 743, 746–48 (7th Cir.1981) (*D'Oench* did not estop lessee's defense that lessor, failed bank, failed to purchase certain equipment according to facial requirements of lease).

▮ However, Defendants also argue that under Federal Rule of Civil Procedure 56(f), further discovery is necessary before the Court may properly determine whether the Old Association's records contained a reasonably explicit written agreement that the Note, Mortgage, and Lease consisted of a single transaction imposing bilateral obli-

gations. Federal Rule of Civil Procedure 56(f) states that

> [s]hould ·it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit ... discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). "When a party files an affidavit under Rule 56(f) for additional discovery time, the party invokes the trial court's discretion." *Jensen v. Redev. Agency*, 998 F.2d 1550, 1553–54 (10th Cir.1993). Furthermore, "[u]nless dilatory or lacking in merit, the motion should be liberally treated." *Id.* at 1554 (citation omitted). The party filing the affidavit must explain "why facts precluding summary judgment cannot be presented." *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir.1992). The party must also "state with specificity how the desired time would enable the nonmoving party to meet its burden in opposing summary judgment." *Jensen*, 998 F.2d at 1554 (citation omitted).

In their Rule 56(f) affidavits, Defendants adequately explain why they cannot present facts precluding summary judgment and how additional time would enable them to obtain such facts. Undisputedly, Plaintiff. has not produced the Old Association's entire file regarding the Note, Mortgage, and Lease. Rather, Plaintiff has produced *Plaintiff's* entire file regarding these instruments. Additional records are very probably in the possession of the RTC, the ·Old Association's receiver. Defendants have been unable to obtain these records from the RTC because the RTC was not made a party to this action until August 31, 1995, and did not file an answer to Defendants' third-party complaint until January 25, 1996. However, now that it is a party to this case and has filed its answer, the RTC is subject to the discovery

process and Defendants may obtain from the RTC all relevant documents in its possession.

■ The Court finds that Defendants are entitled to attempt to discover all relevant documents in the RTC's possession before the Court may properly determine as a matter of law whether the Old Association's records contained any explicit agreement that the parties' obligations under the Note, Mortgage, and Lease would be bilateral. Thus, consideration of whether *D'Oench* bars Defendants' bilateral obligations defense is premature under Rule 56(f). The Court in its discretion will accordingly deny Plaintiff's motion for summary judgment.[3]

### 3. 12 U.S.C. § 1821(e)

■ The Court need not consider whether the RTC timely and effectively repudiated the Lease under section 1821(e) to deny Plaintiff's motion for summary judgment. However, because Defendants have moved for partial summary judgment on this issue, the Court must nonetheless address the timeliness and effectiveness of the RTC's repudiation. Defendants first assert that as a matter of law, the RTC failed to timely repudiate the Lease, and the repudiation was therefore ineffective. Section 1821(e) authorizes "the conservator or receiver for any insured depository institution [to] disaffirm or repudiate any contract or lease.... The conservator or receiver ... ·shall determine whether· or not to exercise the rights of ·repudiation under this subsection *within a . reasonable period following [the conservator's or receiver's] appointment.*" 12 U.S.C. § 1821(e)(1), (2) (emphasis added).

"Congress did not define what constitutes a 'reasonable period' of time" within the meaning of section 1821(e). *Franklin Fin. v. Resolution Trust Corp.*, 53 F.3d 268, 271–72 (9th Cir.1995). Rather, "Congress specifically intended to give [the] RTC flexibility in determining what constitutes a reasonable period for repudiation." *Resolution Trust*

---

**3.** Because the Court will deny Plaintiff's motion for summary judgment on other grounds, it need not address Defendants' arguments in opposition to this motion that genuine issues of material fact exist regarding Defendants' defenses of waiver, laches, estoppel, mitigation of damages, offset,

and failure of consideration. The Court will also reject Plaintiff's cursory arguments in support of its motion that Defendants are not entitled to damages for the RTC's repudiation of the Lease. To sustain their affirmative defenses, Defendants need not seek damages for the repudiation.

Corp. v. CedarMinn Bldg. Ltd. Partnership, 956 F.2d 1446, 1455 (8th Cir.1992). The legislative history of section 1821(e) indicates "that the powers granted RTC [under this section] ... parallel the powers granted conservators or receivers under the former law [of bankruptcy]." Plymouth Mills, Inc. v. Federal Deposit Ins. Corp., 876 F.Supp. 439, 442 (E.D.N.Y.1995) (citing CedarMinn Bldg. Ltd. Partnership, 956 F.2d at 1453). Thus, "the factors which have been considered in bankruptcy law as relevant under the 'reasonable period' standard, should be applied to review the timeliness of a [repudiation] by [the RTC]." Id. at 443. Specifically, the Court should consider "the landlord's need for certainty as to when it may seek to lease the premises to another tenant, and the needs of the [RTC] to facilitate its management of the insolvent bank and to preserve the insolvent bank's assets." Id.

Most federal courts have concluded that "the RTC has a reasonable period for repudiation following its appointment as receiver, even though it had previously acted as conservator for the same institution." 1185 Ave. of the Americas Assocs. v. Resolution Trust Corp., 22 F.3d 494, 498 (2d Cir.1994); CedarMinn Bldg. Ltd. Partnership, 956 F.2d at 1450–1455. Thus, the Court must calculate the reasonable period allowed by section 1821(e) from the date the RTC was appointed as the receiver for the lessee under the Lease ("the Lessee"). The parties dispute, however, whether the Lessee after August 9, 1989 was the Old Association or the New Association. Defendants claim that because there is no evidence that the New Association ever assumed the Lease, the Old Association must have remained the Lessee. Plaintiff argues that "while direct evidence is unavailable at this time," the Old Association ceased to exist in July 1989, and the New Association must have assumed all of the Old Association's assets and liabilities, including the Lease, at that time. Pl.'s Resp. Opp. Defs.' Mot. Partial Summ. J. Ex. 4 ("[The] New Association was organized to take over substantially all of the assets and liabilities of the [Old] Association.").

The RTC was appointed receiver for the Old Association on August 9, 1989. It was appointed receiver for the New Association on May 31, 1990. Evidence presently before the Court suggests that the RTC repudiated the Lease on December 5, 1990. Thus, according to Plaintiff's view, the RTC repudiated the Lease six months after its appointment as receiver for the Lessee; and, according to Defendants' view, the RTC repudiated the Lease sixteen months after its appointment as receiver for the Lessee. The Court also notes that the RTC allegedly entered into an agreement with another financial institution, First National Bank ("FNB"), whereby FNB had from June 15, 1990 to October 15, 1990 to exercise an option to assume the Lease. The RTC allegedly repudiated the Lease less than two months after FNB's alleged option expired.

The Court finds that genuine issues of material fact exist regarding whether the RTC timely repudiated the Lease. As indicated by the factors the Court must consider, Plymouth Mills, Inc., 876 F.Supp. at 443, the analysis of "what constitutes a 'reasonable time' ... is fact sensitive ... and must occur on a case by case basis." 701 NPB Assocs. v. Federal Deposit Ins. Corp., 779 F.Supp. 1336, 1339 (S.D.Fla.1991) (citations omitted). The Court will therefore deny Defendants' motion for partial summary judgment regarding the timeliness of the RTC's repudiation of the Lease.

Defendants also argue that as a matter of law, the RTC failed to effectively repudiate the Lease because its notice of repudiation to Defendants was on behalf of the New Association, although the Old Association was still the Lessee. However, as discussed supra, genuine issues of material fact exist regarding whether the Lessee after August 9, 1989 was the Old Association or the New Association. The Court will therefore deny Defendants' motion for partial summary judgment regarding the effectiveness of the RTC's notice of repudiation of the Lease on behalf of the New Association.

**B. Plaintiff's September 28, 1995 Objections to Decision of United States Magistrate**

■ . Defendants requested that Plaintiff produce certain documents pursuant to Fed-

eral Rule of Civil Procedure 45(2)(A) and a Subpoena Duces Tecum on July 21, 1995. On August 31, 1995, Plaintiff filed a motion for protective order with respect to some of the documents sought. Magistrate Judge Lorenzo F. Garcia entered an Order granting in part and denying in part Plaintiff's motion for protective order on September 14, 1995. Plaintiff now seeks review of Judge Garcia's Order pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. *See* 28 U.S.C. § 636(b)(1)(A) (1994); Fed.R.Civ.P. 72(a).

According to Rule 72(a), "[t]he district judge to whom the case is assigned shall consider ... objections [to the magistrate judge's order regarding nondispositive pretrial matters] and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Federal Rule of Civil Procedure 26, which generally governs discovery, states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The Supreme Court has construed relevance for the purposes of discovery "broadly[,] to encompass any matter that bears on, or that reasonably could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). *But see Mitchell v. Hutchings*, 116 F.R.D. 481, 483–84 (D.Utah 1987) ("If the evidence sought is not relevant, and thus inadmissible, and it does not appear that the evidence sought will lead to evidence that is admissible, then the court can properly limit discovery."). "One objecting to discovery on the grounds of relevancy carries

the burden to sustain the objection." *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 95 (S.D.Iowa 1992).

Plaintiff first objects to Judge Garcia's ruling regarding Defendants' requests numbered 1, 7, 8, and 9. These requests seek information about the sale of the Note and Mortgage by the RTC to Plaintiff. Judge Garcia found that these requests "seek[ ] relevant information that is necessary to evaluate settlement options. Moreover, the requested information will provide relevant information on how the [Note and Mortgage were] acquired and whose testimony will be necessary at the time of trial." *RTC Mortgage Trust 1994–S3 v. Guadalupe Plaza*, Civ. No. 95–507 BB, slip op. at 3 (D.N.M. filed Sept. 14, 1995) (Garcia, Mag.J.). Because the Note and Mortgage are, as Judge Garcia observed, "the subject of this lawsuit," the Court finds the relevance of information regarding Plaintiff's acquisition of them apparent. *Id.* Furthermore, Plaintiff has failed to explain its claim that the information requested "constitutes confidential commercial information protected under Fed.R.Civ.P. 26(c)(7)," Pl's Objections Decision U.S. Magistrate at 7, and the Court need not consider this claim. Thus, the Court finds that Judge Garcia's decision to allow Defendants' requests numbered 1, 7, 8, and 9 is neither clearly erroneous nor contrary to law.

Plaintiff next objects to Judge Garcia's ruling regarding Defendants' requests numbered 3, 4, and 5. These requests concern the identity and nature of Trotter Kent, Inc. ("Trotter Kent") and of Plaintiff, and the relationship between these two entities. Judge Garcia determined that this information is relevant because Defendants must be able to determine whether Trotter Kent and Plaintiff legally exist and have the authority to do business and to prosecute this action.

With respect to all of these requests, Plaintiff objects that the information sought is contained in public records, and Plaintiff therefore need not produce it. *See Securities & Exch. Comm'n v. Samuel H. Sloan & Co.*, 369 F.Supp. 994, 995 (S.D.N.Y.1973) ("[D]iscovery need not be required of documents of public record which are equally

accessible to all parties."). First, the Court questions whether all of the information Defendants seek is actually contained in public records. Furthermore, the information, even if public, does not appear to be "equally accessible to all parties." *Samuel H. Sloan & Co.*, 369 F.Supp. at 995. Plaintiff is far more likely than Defendants to know precisely which public entities possess the information Defendants seek. The Court therefore finds Judge Garcia's rejection of this argument to be neither clearly erroneous nor contrary to law.

■ With respect to Trotter Kent, Plaintiff protests that Trotter Kent is not a party to this action and thus should not have to produce any document other than a Certificate of Good Standing. Plaintiff's argument does have some legal support. *See Collins & Aikman Corp. v. J.P. Stevens & Co.*, 51 F.R.D. 219, 221 (D.C.S.C.1971) (noting "quite strong considerations indicating that the discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents"). Plaintiff's assertion that Trotter Kent is a nonparty to this action is, however, disingenuous. Plaintiff chose to bring this action through Trotter Kent as its attorney-in-fact. Plaintiff cannot now be heard to claim that Trotter Kent is not involved. Judge Garcia's determination that Trotter Kent's legal existence and authority to do business and prosecute this action is relevant is neither clearly erroneous nor contrary to law.

■ Likewise, with respect to itself, Plaintiff states that it will produce a Certificate of Good Standing indicating its legal existence and authority, but will not produce any other documents. Specifically, Plaintiff claims that it should not be required to produce a copy of the documents under which it is organized, because these documents are unavailable to it. Plaintiff entirely fails to explain why the documents that form the basis of its existence are unavailable to it. The Court therefore finds proper Judge Garcia's determination that such documents are relevant and that production of them will not overburden Plaintiff.

■ Judge Garcia appears to have appropriately limited the information Plaintiff must produce regarding its relationship with Trotter Kent at the September 11, 1995 hearing he held on this motion. Specifically, Judge Garcia ruled that Plaintiff need only produce the limited power of attorney between Plaintiff and Trotter Kent, regarding the Note and Mortgage at issue in this case.

■ Finally, Plaintiff objects to Judge Garcia's ruling regarding Defendants' request numbered 10. In this request, Defendants seek information regarding all litigation past or pending in which Plaintiff or Trotter Kent was or is a party. Judge Garcia limited this request to information regarding "criminal litigation as described by Fed.R.Evid. 609 from 1985 to the present [and] all civil litigation relating to notes and mortgages for the past three years." *RTC Mortgage Trust 1994-S3*, Civ. No. 95–507BB, slip op. at 4. Plaintiff objects that this discovery is irrelevant, overly burdensome, and available in public records.

The Court disagrees. First, Judge Garcia's determination that this discovery is relevant and not overly burdensome is neither clearly erroneous nor contrary to law. Second, while the information sought may be available in public records, the information does not appear to be "equally accessible to all parties," *Samuel H. Sloan & Co.*, 369 F.Supp. at 995, because Plaintiff undoubtedly has greater knowledge than Defendants of when and where Plaintiff and its attorney-in-fact were involved in litigation. Discovery of this information is therefore proper. Thus, the Court will deny Plaintiff's objections to Magistrate Judge Garcia's Order of September 14, 1995.

### III. Conclusion

**The Court will deny Plaintiff's motion for summary judgment, and will grant in part and deny in part Defendants' motion for partial summary judgment, as set forth *infra*.** First, as a matter of law, 12 U.S.C. § 1823(e) does not operate retroactively to bar Defendants' defense that the Note, Mortgage, and Lease contained bilateral obligations, and the Court will grant Defendants' motion for partial summary judgment on this

issue. Second, consideration of whether *D'Oench* bars Defendants' bilateral obligations defense is premature under Rule 56(f), and the Court will deny Plaintiff's motion for summary judgment on this basis. Finally, genuine issues of material fact exist regarding whether the RTC timely and effectively repudiated the Lease under 12 U.S.C. § 1821(e), and the Court will deny both Plaintiff's motion for summary judgment and Defendants' motion for partial summary judgment on this issue. **The Court will also deny Plaintiff's objections to Judge Garcia's September 14, 1995 Order.** Judge Garcia's determination that the discovery Defendants sought in their July 21, 1995 Subpoena Duces Tecum was relevant and not otherwise protected is neither clearly erroneous nor contrary to law.