Cowin, J.
INTRODUCTION
Plaintiffs John W. Boynton (“Boynton”) and Albert E. Winemiller (“Winemiller”) filed this action seeking to compel defendant William T. Boland (“Boland”) to contribute towards a debt owed to Shawmut Bank,. N.A. (“Shawmut”). This case is before the Court on consideration of plaintiffs’ and defendant’s motions for summary judgment under Mass.R.Civ.P. 56.
*79 BACKGROUND
The following undisputed facts are drawn from the submissions of the parties.[3] Boynton, Winemiller and Boland are investors in the DownTime Corporation (“DownTime”), a business incorporated in Massachusetts in March, 1987 to develop, own and operate a restaurant located at 20 Powder Mill Road, Maynard, Massachusetts. The shares initially issued by DownTime were owned 35% by Boynton, 25% by Winemiller and 20% by Boland; other minority shareholders owned the remaining 20% of the issued stock. Boland was named a Director of the corporation and temporarily served as its Clerk.
DownTime secured $600,000 in financing from First Bank in exchange for the delivery of a $600,000 demand promissory note (“the note”), executed on December 15, 1987. Shawmut Bank, N.A. (“Shawmut”) later became assignee and successor-in-interest to First Bank. The note was secured in part by the unconditional personal guaranties of Boynton, Winemiller and Boland. Additional security was provided by the guaranty of the West Bay-Wianno Realty Trust (“West-Bay”), the sole beneficiary of which was WBW Associates (“WBW’). West-Bay’s sole asset was a parcel of real estate located in Osterville, Massachusetts and West-Bay’s guaranty was secured by a mortgage on the said Osterville property. Boynton and Winemiller were trustees of West-Bay and the sole partners in WBW.
At some point before or after the execution of the note, Boland came to believe that his guaranty covered only those portions of the debt unsecured by the mortgage on the Osterville property. Additionally, Bo-land became convinced that, in the event of default, since he owned only 20% of DownTime’s stock, he would only be responsible for 20% of the value of the note. The parties dispute the cause of Boland’s beliefs about his obligations under the promissory note and the legal effect of those beliefs.
In his original deposition, Boland stated that he had no discussions with either First Bank or the other shareholders in DownTime regarding his personal guaranty at any time prior to the execution date of the note. (Deposition of William T. Boland, at 49-50.) Furthermore, Boland stated that no one had told him either orally or in writing that his guaranty was restricted to 20% of the value of the note. (Deposition of William T. Boland, at 53-55.)
After his deposition was taken, Boland submitted an errata sheet that was intended to correct alleged errors in his deposition answers but was not signed under the pains and penalties of perjury. In the errata sheet, Boland stated that Boynton told him over the telephone that his obligation was limited to 20% of the note’s value and that his obligation would come into effect only after the Osterville property had been liquidated to satisfy the debt. Boland’s assertions in the errata sheet are also supported by his statements given in a supplemental answer he submitted to the plaintiffs’ first set of interrogatories and in his affidavit, both entered under oath. Boynton and Winemiller dispute Boland’s contention that Boynton told Boland that his guaranty was limited in nature before the execution of the promissory note.
Boynton and Winemiller agree with Boland’s contention that all three parties held discussions after the execution of the note concerning the general nature of DownTime’s business. Numerous financial discussions were held in company offices. Boynton and Boland held several discussions concerning the nature of Boland’s guarantor ship. One such discussion was held over the telephone; another occurred in Boland’s kitchen during the summer of 1988. Boland states in his deposition that, during these discussions, Boynton told him that his guaranfy was limited in nature. (Deposition of William T. Boland, at 66-68.) Further discussions were held after the corporation became unstable in 1990 in various locations between Boynton, Boland and several other parties. Winemiller did not attend these latter discussions. (Deposition of William T. Boland, at 70-76.)
DownTime defaulted on its obligation to the Shawmut in 1990. Shawmut then demanded immediate full repayment of the entire $600,000 principal plus accrued interest. In April, 1991, DownTime sold all of its assets for $300,000; the debt owed to Shawmut was consequently reduced to $300,000 plus additional accrued interest. In August, 1992, Shawmut also foreclosed on the Osterville property, applying the proceeds to satisfy DownTime’s outstanding debt. The principal debt and most of the remaining interest was paid off by the $430,000 in proceeds from the foreclosure sale of the Osterville property.[4] Thus, $430,000 of the debt guaranteed by the plaintiffs and the defendant has been satisfied from an asset belonging to Boynton, Winemiller and West-Bay. As a result, Boynton and Winemiller brought this action to compel Boland to contribute towards the debt to Shawmut satisfied by the assets of plaintiffs Boynton and Winemiller and by the assets of West-Bay.
DISCUSSION
Summary judgment is granted when there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating affirmatively both elements. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A parly moving for summary judgment who does not have the burden of proof at trial, may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof *80 of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass 805 (1991). “If the moving parly establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion.” Pederson, supra at 17. The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
Rule 30(e) of the Massachusetts Rules of Civil Procedure permits a deponent to alter deposition testimony when corrections are made to the deposition transcript and the entire transcript is then signed:
(e) Submission to Witness; Changes; Signing.
When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witnesses for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed within 30 days of its submission to him, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed, unless on a motion to suppress under Rule 32(d)(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.
Mass.R.Civ.P. 30(e). Boland’s corrections have not been submitted in the procedure mandated by the Rules of Civil Procedure. The errata sheet was not signed under pains and penalties of perjury by the deponent.
It cannot be disputed that Boland’s errata sheet contains fundamental changes to the substance of his testimony. Several responses made by Boland during his deposition have been changed from “no” to “yes” or vice versa. In interpreting Rule 30(e) of the Federal Rules of Civil Procedure, an almost verbatim copy of Massachusetts Rule 30(e),[5] the federal courts have determined that corrections that alter the substance of a deponent’s testimony cannot be made through the correction process set out in Rule 30(e). S.E.C. v. Parkersburg Wireless Ltd. Liab. Co., 156 F.R.D. 529, 535 & n. 11 (D.D.C. 1994); Greenway v. International Paper, 144 F.R.D. 322 (W.D.La. 1992) (“[t]he Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses”); Rios v. Bigler, 847 F.Supp. 1538 (D.Kan. 1994) (“Although the errata sheet may be used to correct errors or to clarify or change an answer when a question is misunderstood, it may not be used to allow a person to alter what has been said under oath”). Although Boland’s errata sheet contains few corrections, and although these corrections change a very small number of words, the changes and corrections provide the only factual support for Boland’s contention that Boynton told Boland his guaranty was limited prior to the signing of the written personal guaranty contract. By submitting the errata sheet, Boland has attempted to use the deposition correction process to alter the substance of his testimony.[6]
The testimony contained in Boland’s affidavit and the supplemental answers submitted to plaintiffs interrogatories contradict prior statements made under oath in Boland’s deposition testimony. As the Appeals Court stated in O'Brien v. Analog Devices, Inc., “a party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition.” 34 Mass.App.Ct. 905, 906 (1993). See also: Morrell v. Precise Engineering, Inc., 36 Mass.App.Ct. 935, 937 (1994) (“[t]he plaintiffs affidavit is not some sort of wand that can wave away the damage to his claim contained in testimony previously given at the deposition hearing”); Spilios v. Cohen, 38 Mass.App.Ct. 338, 340 n.2 (1995) (discussion of the history of this doctrine). Because of the manner in which they directly contradict prior sworn deposition testimony, the affidavit and supplemental interrogatory answers cannot, in whole or part, constitute sufficient facts for Boland to avert summary judgment.
However, it is not necessary to determine whether Boland’s errata sheet, affidavit and supplemental answers to plaintiffs’ interrogatories constitute proper summary judgment materials or whether they are improper and must be excluded from consideration. Even assuming, arguendo, that all of the materials submitted by Boland are proper summary judgment materials, Boland has not provided the Court with sufficient countervailing details to demonstrate that material facts exist entitling him to a jury determination of his duty to contribute to the debt owed Shawmut. Community National Bank v. Dawes, supra at 556-57.
The terms of Boland’s guaranty are set out in a written contract, which states in part:
the Guarantor hereby unconditionally guarantees to the Bank, that the Borrower will promptly perform and observe every agreement and condition in any Credit Arrangement ... to be performed or observed by the Borrower . . .
*81 The contract contains no references to either of the modifications Boland believed were made to the guaranty: the limit of liability to the share of capital contributed by Boland and the priority given the Osterville property in securing the debt. The contract is apparently a form contract used by First Bank; none of the provisions of the contract even mention Boynton, Winemiller, West-Bay or WBW.
If the representations were made before the contract was signed, they constitute inadmissible parol evidence. F.D.I.C. v. Bay State Development Corp., 32 F.3d 636, 640 n.5 (1st. Cir. 1994). “Evidence of prior or contemporaneous oral agreements cannot be admitted to vary or modify the terms of an unambiguous written contract.” (Emphasis in original.) Fairfield 274-278 Clarendon Trust v. Dwek, 970 F.2d 990, 993 (1st Cir. 1992), citing New England Financial Resources, Inc. v. Coulouras, 30 Mass.App.Ct. 140, 145 (1991).
If the representations were made after the contract was signed, they could not have modified the contract unless they were supported by independent consideration. Xerox Financial Services Life Ins. v. High Plains, 44 F.3d 1033 (1st. Cir. 1993), quoting Farnsworth, Contracts §762 (1990). Even if independent consideration were present, the representations would have to independently satisfy the Statute of Frauds in order to modify a written contract to guarantee the debt of another. M.G.L.c. 259, §1. No document has been submitted containing the alleged modifications. Thus, the Statute has not been satisfied.
Since the written contract was not modified by Boynton’s alleged representations,[7] Boland’s guaranty remains as defined in the contract: an unconditional personal guaranty of the entire amount of the liability owed First Bank. Both parties agree that Boland has not contributed any money at all to the debt owed Shawmut. The existence of a common liability, and the fact that one guarantor has not contributed towards the liability, is sufficient to trigger the paying guarantors’ right of contribution from the non-paying guarantor. In re Cunningham, 163 B.R. 657 (D.Mass. 1994). Viewing all of the facts presented by the parties, even those in Boland’s errata sheet, affidavit and supplemental answers to interrogatories, no issues of material fact remain as to Boland’s liability.
The right of contribution among joint guarantors is not fixed in contract, but is founded in and controlled by principles of equity and natural justice. In re Tenn-Ero Corp., 14 B.R. 884, affirmed Pension Ben. Guar. Corp. v. Quimet Corp., 32 B.R. 65, case remanded 711 F.2d 1085, cert. denied 464 U.S. 961. Boynton and Winemiller’s action is not premature, despite the fact that Shawmut has not initiated legal proceedings to collect on the remainder of the debt owed after the foreclosure on the Osterville property. The right to bring an inchoate contribution action arises not when a claimant pays more than his or her share, but when the common liability first arises. In re Cunningham supra. Id. Here, plaintiffs have provided undisputed facts showing that West-Bay, and hence Winemiller and Boynton, have paid more than their fair share of the First Bank (Shawmut) debt. As a result, as a matter of law, Boland has a duty to contribute his pro rata share of the $430,000 debt which has been satisfied by the plaintiffs. His pro rata share is twenty-five percent or $107,500 as he is one of four guarantors.[8] Interest is due from the date of demand, March 15, 1994.
ORDER
For the foregoing reasons, defendant William Boland’s motion for summary judgment is DENIED. The motion for summary judgment of plaintiffs John Boynton and Albert Winemiller, individually, as Trustees of the West Bay Wianno Realty Trust, and as Partners of WBW Associates, is ALLOWED. Judgment shall enter in the amount of $107,500 together with interest calculated from the date of demand, March 15, 1994.

A certain set of facts is disputed and the text sets forth that disagreement.

Some interest and expenses remained unpaid.

Federal Rule of Civil Procedure 30(e) is identical to Mass.R.Civ.P. 30(e) except for one minor grammatical difference. In the first sentence of the federal rule, instead of using the pronoun “him” for the word “witness,” the rule states “... shall be read to or by the witness.”

The timing of the errata sheet is also noteworthy. The errata sheet was not submitted until after Boland had been served with the instant summary judgment motion. Boland’s affidavit is dated one month after the motion had been served on him.

The Court notes that, according to the facts presented by the parties, only Boynton made representations to Boland. Winemiller did not make any statements modifying or altering the terms of Boland’s guaranty.

In a telephone conference between the Court and both parties on March 5,1996, the plaintiffs have agreed that there were four guarantors. The plaintiffs have also submitted a letter to this effect.